IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| STATE OF WASHINGTON, | ) | |
|---|---|---|
| | ) | No. 75834-9-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| JAMES BRADLEY ANDERSON, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: July 30, 2018 |
| | ) | |

BECKER, J. — Appellant, tried and convicted on five counts of child rape and molestation, was exposed to double jeopardy by jury instructions that did not prevent the jury from basing two convictions on the same act of oral-genital intercourse. He claims that defense counsel was ineffective for proposing the deficient instructions. We reject this argument because appellant has not shown a reasonable likelihood that the trial outcome would have been different had counsel's error not occurred.

FACTS

The State charged appellant James Anderson with one count of second degree child molestation, two counts of first degree child molestation, one count of second degree child rape, and one count of first degree child rape. The alleged victim, KJ, was 20 years old when the trial occurred in 2016. She

testified about a sexual relationship with Anderson that he initiated when she was 9 and he was around 18. At the time, KJ was living in Everett with her grandmother and her grandmother's partner, who was Anderson's father. Anderson often stayed there, and he later resided with them when they lived in Mukilteo. Anderson was often left in charge of KJ and other young children in the house. KJ testified that Anderson secretly had sex with her on a regular basis, including oral sex and vaginal intercourse. KJ described certain instances in detail.

When KJ was 13, she moved back in with her mother and her mother's partner. She told them about her history with Anderson. She was initially unwilling to share details with police. Four years later, after undergoing therapy, KJ decided to talk to a detective.

The defense presented testimony from KJ's grandmother, Anderson's father, and other family members. They denied ever witnessing suspicious interactions between KJ and Anderson. Anderson did not testify. The defense strategy was to cast doubt on KJ's version of events.

In closing, with the aid of a PowerPoint presentation, the prosecutor matched particular incidents described by KJ to each of the five counts. Count 1, second degree child molestation, had a charging period of May 12, 2008, to May 11, 2010. The State elected "the couch" incident to support this count. KJ testified about a time when she was 11 and she and Anderson had penile-vaginal intercourse on the living room couch in the middle of the day when no one else

2

was home. She did not have any clothes on. She testified, "I was on top, and we were sitting." She recalled that it felt good.

Counts 2, 3, and 4—the first degree rape count and the two counts of first degree molestation—shared the same charging period of May 12, 2005, to May 11, 2008. For count 2, first degree rape, the State elected "the trampoline" incident. KJ testified about a time that she performed oral sex on Anderson in the kitchen of their house while her friends were in the backyard jumping on a trampoline. She was 11.

Count 3, first degree child molestation, was "the teddy bear" incident. KJ testified that one night when she was 10, Anderson appeared by her bedside, naked. He told KJ to call him "teddy bear," and he put her hand on his penis.

Count 4, the second count of first degree molestation, was "the pink nightgown" incident. KJ testified that the first time she and Anderson had penile-vaginal sex, when she was 11, she was wearing a pink nightgown and the sex was painful.

Count 5, second degree child rape, had a charging period of May 12, 2008, to May 11, 2010. The State elected "the garage" incident. KJ testified about a time, when she was 12, that she performed oral sex on Anderson while they were in the garage playing video games.

The jury convicted Anderson as charged. The court imposed a minimum sentence of 280 months' imprisonment. Anderson appeals the judgment and sentence.

3

## TO-CONVICT INSTRUCTION—COUNT 1

The to-convict instruction for count 1, second degree child molestation, required the State to prove that KJ was "at least twelve years old" when the molestation occurred. Neither party objected to this instruction. To support count 1, the State invoked KJ's testimony about having vaginal sex with Anderson on a couch. But KJ testified that she was 11 when that incident occurred.

On appeal, Anderson contends that his conviction for second degree child molestation must be reversed given the discrepancy between KJ's testimony and the age requirement in the to-convict instruction. The State concedes that the conviction on count 1 should be reversed. We accept the State's concession.

The lower age limit of 12 years old, though included in the statute for second degree child molestation, is not an essential element of the crime. State v. Goss, 186 Wn.2d 372, 378-82, 378 P.3d 154 (2016). But elements in a to-convict instruction that are not objected to become the "law of the case"; the State must prove those elements beyond a reasonable doubt to prevail. State v. Hickman, 135 Wn.2d 97, 99, 954 P.2d 900 (1998). In this case, therefore, the State was required to prove that KJ was at least 12 at the time of the molestation.

KJ testified about other sexual encounters with Anderson that occurred when she was 12 or older. But it is not apparent that the jury unanimously agreed to base the conviction for second degree molestation on one of these other events. Questions sent by the jury during deliberations suggest confusion about whether they were bound by the prosecutor's election of the couch incident to support count 1. In response to these inquiries, the court referred the jury to

their instructions. The instructions did not advise jurors that they had to agree unanimously on a particular act to support count 1, a requirement in the absence of a valid election by the State. State v. Petrich, 101 Wn.2d 566, 572, 683 P.2d 173 (1984).

On this record, we conclude that the State did not meet its obligation, imposed by the to-convict instruction, to prove the lower age limit. We cannot be sure that the jury rejected the State's election of the couch incident, which did not provide sufficient evidence on the age element of the crime, as defined by the to-convict instruction, and we cannot be sure that the jury unanimously agreed on some other act to support count 1. Ambiguities in a jury verdict must be resolved in the defendant's favor. State v. Kier, 164 Wn.2d 798, 811, 194 P.3d 212 (2008). The appropriate remedy is to reverse the conviction for second degree molestation and dismiss the charge with prejudice. Hickman, 135 Wn.2d at 99.

### INEFFECTIVE ASSISTANCE—DOUBLE JEOPARDY

Anderson claims that his right to effective counsel was violated by counsel's proposal of jury instructions that did not protect him from double jeopardy. He must establish both deficient performance and prejudice. State v. Jones, 183 Wn.2d 327, 330, 352 P.3d 776 (2015). The first prong requires a showing that counsel's representation fell below an objective standard of reasonableness, considering all circumstances. Strickland v. Washington, 466 U.S. 668, 688, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Our review is highly deferential; we indulge a strong presumption of reasonableness. State v. Thomas, 109 Wn.2d 222, 226, 743 P.2d 816 (1987). The prejudice prong requires Anderson to show a reasonable probability that, but for counsel's errors,

the result of the proceeding would have been different. Thomas, 109 Wn.2d at 226. We review ineffective assistance claims de novo. State v. Fedoruk, 184 Wn. App. 866, 879, 339 P.3d 233 (2014).

Anderson contends that the jury instructions proposed by his counsel allowed the jury to use the same act to convict him on more than one count; that is, he faced multiple punishments for the same offense, a double jeopardy problem. State v. Borsheim, 140 Wn. App. 357, 366, 165 P.3d 417 (2007). Defense counsel proposed instructions that were markedly similar to those submitted by the State.[1] The court adopted a set identical to the prosecutor's, with one added instruction not relevant here. Defense counsel made no objections to the court's instructions.

Anderson does not challenge the instructions directly. It is doubtful that he could because he proposed them. "Under the invited error doctrine, a defendant may not request that instructions be given to the jury and then complain upon appeal that the instructions are constitutionally infirm." State v. Aho, 137 Wn.2d 736, 744-45, 975 P.2d 512 (1999); State v. Hood, 196 Wn. App. 127, 131-32, 382 P.3d 710 (2016), review denied, 187 Wn.2d 1023 (2017).[2] But review "is not precluded where invited error is the result of ineffectiveness of

---

[1] See Clerk's Papers at 86-101 (defense instructions), 235-60 (State's instructions); see also Report of Proceedings at 232, 350 (court observes "I don't know if there are many differences in your packages"; "I don't think there were any material differences in the two packets of instructions").

[2] Proposing a deficient instruction invites error, while merely failing to object to the State's deficient instruction does not. Hood, 196 Wn. App. at 133-34. Here, the record demonstrates unequivocally that counsel proposed the challenged instructions.

counsel." Aho, 137 Wn.2d at 745. By asserting ineffective assistance instead of challenging the instructions directly, Anderson has avoided application of the invited error doctrine. Review is not precluded, but the result is that we must review his double jeopardy claim according to the standard of review for ineffective assistance rather than the standard of review for instructions that violate a constitutional right. Relief is warranted only if counsel's proposal of deficient instructions was both deficient performance and prejudicial.

We turn to the specifics. Anderson first contends the State invoked the same event to convict him on count 1, second degree child molestation, and count 4, one of the two counts of first degree child molestation, and nothing in the instructions proposed by defense counsel prevented this result. Count 1 was based on the aforementioned incident when KJ and Anderson had sex on a couch during the day; she was "on top" and had no clothes on; and the sex "felt good."[3] To prove count 4, the State relied in closing argument on a purportedly different incident of penile-vaginal intercourse during which KJ recalled that they were on a foldout couch, she was wearing a pink nightgown, and the sex was painful.[4] Anderson contends "A close examination of K.J.'s testimony reveals that these were a single incident: the first instance of vaginal intercourse between K.J. and Anderson."

The record does not support Anderson's contention that the State relied on the same act to prove count 1 and count 4. But even assuming it did, and

_____

[3] Report of Proceedings at 278, 331, 434.
[4] Report of Proceedings at 436-37.

7

defense counsel was ineffective for contributing to the double jeopardy violation, the remedy would be dismissal of the lesser punished crime. State v. Villanueva-Gonzalez, 175 Wn. App. 1, 8, 304 P.3d 906 (2013), aff'd, 180 Wn.2d 975, 329 P.3d 78 (2014). The lesser of the two crimes was second degree child molestation, charged in count 1. We have already determined that Anderson's conviction on count 1 will be reversed and dismissed with prejudice. Thus, it is unnecessary to consider whether there was a double jeopardy violation with respect to counts 1 and 4. For the same reason, we do not address whether the instructions allowed the jury to convict Anderson of counts 1 and 5 based on the same act, an argument implied by pages 25-26 of his brief of appellant. Count 1 will be dismissed on a different ground.

Anderson next contends that the deficient instructions allowed the jury to convict him of count 2, first degree child rape, and either count 3 or 4, the counts of first degree molestation, based on the same act of oral-genital intercourse.[5] In the to-convict instructions for counts 3 and 4, jurors were told that count 3 required proof of an occasion "separate and distinct from that alleged" in count 4, and vice versa. Anderson contends that there should have been similar language informing jurors that counts 3 and 4 required proof of an act separate and distinct from that alleged in count 2. Such language was absent from defense counsel's proposed to-convict instructions and those given by the court. Anderson contends that counsel's failure to propose "separate and distinct"

---

[5] Count 5, second degree child rape, is not at issue because it involved a different charging period.

language was prejudicial and requires reversal of one of the convictions for first degree child molestation (count 3 or 4), as child molestation is a lesser crime than the rape conviction under count 2.

Child rape and child molestation have different elements. First degree child rape occurs when the defendant has sexual intercourse with a child younger than 12 years old. RCW 9A.44.073(1). "Sexual intercourse" includes oral-genital contact as well as penetration of the vagina or anus. RCW 9A.44.010(1). First degree child molestation occurs when the defendant engages in sexual contact with a child younger than 12. RCW 9A.44.083(1). "Sexual contact" means "any touching of the sexual or other intimate parts of a person done for the purpose of gratifying sexual desire of either party or a third party. RCW 9A.44.010(2). Thus, child rape requires proof of intercourse, which is not an element of child molestation, and child molestation requires proof that the defendant acted for sexual gratification, which is not an element of rape. State v. Jones, 71 Wn. App. 798, 825, 863 P.2d 85 (1993), review denied, 124 Wn.2d 1018 (1994).

Child rape and child molestation can nonetheless be the same in fact, for double jeopardy purposes, when both are proven by the same instance of oral-genital contact. State v. Land, 172 Wn. App. 593, 600, 295 P.3d 782, review denied, 177 Wn.2d 1016 (2013). "Where the only evidence of sexual intercourse supporting a count of child rape is evidence of penetration, rape is not the same offense as child molestation." Land, 172 Wn. App. at 600. "But where the only evidence of sexual intercourse supporting a count of child rape is evidence of

sexual contact involving one person's sex organs and the mouth or anus of the other person, that single act of sexual intercourse, if done for sexual gratification, is both the offense of molestation and the offense of rape." Land, 172 Wn. App. at 600.

Thus, in Land, a potential double jeopardy problem arose when the defendant was charged with child molestation and child rape based on conduct involving the same victim and same charging period; the victim testified that the defendant touched her on her breasts and "'lower part,'" inserted his finger inside her vagina, and "'kissed'" her "'on the lower half'"; and the jury was not instructed that it could not convict the defendant of both rape and molestation based on a single act. Land, 172 Wn. App. at 597-98, 600-01; see also State v. Mutch, 171 Wn.2d 646, 661, 254 P.3d 803 (2011). In the final analysis, we found no error because it was manifestly apparent from the record that the rape count was supported only by the victim's testimony about digital penetration. Land, 172 Wn. App. at 601-03.

Here, the jury instructions created a potential double jeopardy problem concerning count 2, the first degree rape count, because the State did not elect to support that count with evidence of penetration. Like counts 3 and 4, count 2 involved a charging period of May 12, 2005, to May 11, 2008. The alleged victim was the same (KJ) with respect to all three counts. The instructions provided to jurors did not include penetration as a means of committing rape; "sexual intercourse" was defined as "any act of sexual contact between persons involving the sex organs of one person and the mouth or anus of another." When

discussing count 2, the rape count, in closing argument, the prosecutor explained that "for purposes of [sexual intercourse], we're talking about when she was giving him oral sex, when she's using her mouth." Under Land, an act of oral sex is both the offense of molestation and the offense of rape.

The jury was not instructed that it could not convict Anderson of first degree molestation, as charged in counts 3 and 4, based on the same incident of oral-genital contact used to support count 2, first degree rape. Thus, jurors theoretically could have had in mind the same act for count 2 as they did for either count 3 or 4 (but not 3 *and* 4, because the jury was instructed that those counts required proof of separate acts). For example, if jurors believed KJ's testimony about the "trampoline" incident—an incident involving oral sex that occurred when KJ was 11—they could have relied on this event to convict Anderson of both first degree rape (count 2) and first degree molestation (count 3 or 4). KJ's testimony provided evidence to satisfy the elements of both crimes. The jury instructions were deficient insofar as they allowed this possibility. Borsheim, 140 Wn. App. at 370. The problem was not averted by the jury instruction that stated, "A separate crime is charged in each count. You must decide each count separately. Your verdict on one count should not control your verdict on any other count." This instruction did not inform jurors that each crime required proof of a separate act. Mutch, 171 Wn.2d at 663.

Flawed instructions that permit a jury to convict a defendant of more than one count based on a single act do not necessarily mean that the defendant received multiple punishments for the same offense; "it simply means that the

defendant *potentially* received multiple punishments for the same offense." Mutch, 171 Wn.2d at 663. Under the standard of review that applies when instructions are directly challenged as inadequate to prevent double jeopardy, we review the entire record to determine whether a double jeopardy violation was actually effectuated. Mutch, 171 Wn.2d at 664. "No double jeopardy violation results when the information, instructions, testimony, and argument clearly demonstrate that the State was not seeking to impose multiple punishments for the same offense." State v. Hayes, 81 Wn. App. 425, 440, 914 P.2d 788, review denied, 130 Wn.2d 1013 (1996). "While the court may look to the entire trial record when considering a double jeopardy claim, we note that our review is rigorous and is among the strictest. Considering the evidence, arguments, and instructions, if it is not clear that it was '*manifestly apparent* to the jury that the State [was] not seeking to impose multiple punishments for the same offense' and that each count was based on a separate act, there is a double jeopardy violation." Mutch, 171 Wn.2d at 664.

Here, the State elected specific incidents to support each count. But the State's elections alone did not eliminate the possibility of a double jeopardy violation. Closing argument cannot be considered in isolation. Kier, 164 Wn.2d at 813. Nothing else in the record provides adequate assurance that it was manifestly apparent to jurors that each count was based on a separate act. The information charged five separate counts, yet KJ testified about more than five sexual encounters with Anderson. Cf. Mutch, 171 Wn.2d at 665. And, as discussed, nothing in the instructions prevented jurors from rejecting the State's

elections and using the same event to convict Anderson of two counts. The jury was correctly instructed that statements by counsel are not evidence. In other words, the instructions, along with the information and evidence, allowed the jury to use the same act of oral-genital intercourse to convict Anderson of both rape and molestation "notwithstanding the State's closing argument." Kier, 164 Wn.2d at 814. If Anderson had been able to challenge the adequacy of the jury instructions directly, as was done in Mutch, we would find a double jeopardy violation because, unlike in Mutch, the instructions did not avoid the possibility that Anderson would be punished twice for the same act. Cf. Mutch, 171 Wn.2d at 665, 666.

But this is a claim of ineffective assistance, and our focus must remain on the conduct of trial counsel. We first conclude Anderson has established deficient performance. Reasonable conduct for an attorney includes researching relevant case law. State v. Kyllo, 166 Wn.2d 856, 862, 215 P.3d 177 (2009). Proposing detrimental instructions may constitute ineffective assistance. State v. Woods, 138 Wn. App. 191, 197-98, 156 P.3d 309 (2007). In this case, defense counsel acted unreasonably by proposing instructions that exposed Anderson to double jeopardy under our decision in Land. The record reveals no strategic reason defense counsel might have had to propose instructions that exposed Anderson to double jeopardy. The deficient performance prong of Anderson's ineffective assistance claim is met under these circumstances.

Anderson has not met his burden, however, of demonstrating prejudice. The relief he seeks is the striking of either count 3 or 4. He has shown that the

13

instructions were not enough to eliminate the *possibility* that the jury used a single act to convict him on count 2 and either count 3 or 4. But if counsel had insisted on proper instructions, is it reasonably probable that the jury would have convicted him on one count less than it did? Anderson does not answer this question. He does not evaluate the likelihood that the jury followed the State's election of specific incidents to match each count. Because Anderson fails to demonstrate that the result of the proceedings would have been different, his ineffective assistance claim fails on the prejudice prong of Strickland.

INEFFECTIVE ASSISTANCE—INVESTIGATION

Anderson also contends that his lawyer was ineffective for not conducting adequate pretrial investigation. This claim pertains to KJ's testimony at trial that she once performed oral sex on Anderson in the kitchen of the Mukilteo house while her friends played on a trampoline in the backyard. This was the basis for count 2, first degree child rape.

After the jury verdict, Anderson moved for a new trial on several grounds. One of his arguments was that KJ's testimony about the trampoline incident was contradicted by evidence he claimed was newly discovered. According to Anderson, KJ's testimony prompted the defense investigator to visit the Mukilteo house. The investigator determined that the kitchen area was visible from the backyard through a sliding glass door. Anderson claims that if this observation had been presented to the jury, it would have undermined KJ's credibility because it was unlikely the sex act described by KJ could have occurred without her friends seeing it. The State countered that KJ disclosed the trampoline

14

incident during pretrial defense interviews. The trial court agreed with the State that the defense had not identified newly discovered evidence. The court accordingly denied the motion for a new trial.

On appeal, Anderson claims that it was unreasonable for his lawyer to not investigate the trampoline incident more thoroughly before trial. He contends that this error deprived the defense of evidence that KJ's story was not credible. Anderson asserts that defense counsel should have interviewed KJ's friends who were in the yard that day to determine if they saw anything.

A showing that counsel failed to conduct appropriate investigations can support a claim of ineffective assistance. Thomas, 109 Wn.2d at 230; see also Fedoruk, 184 Wn. App. at 881 (counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary); Jones, 183 Wn.2d at 340 (failure to interview a particular witness can constitute deficient performance).

Here, the pretrial investigation conducted by defense counsel included interviews with KJ and her grandmother. They drew maps of the Mukilteo house. The drawings do not show where the trampoline was located in the backyard.

It is not apparent that a more thorough investigation would have led to information favorable to the defense. Evidence that the kitchen area was visible from the backyard does not by itself impeach KJ's story. She did not testify that the kitchen area could *not* be seen from the backyard. She said that she was behind a counter while performing oral sex on Anderson. Thus, KJ's friends could not necessarily see what she was doing even if they could see into the

15

kitchen area. Another consideration is that had defense counsel interviewed KJ's friends, they might have corroborated, rather than contradicted, KJ's story. Anderson fails to demonstrate that counsel's pretrial investigation was deficient, and he also fails to show a reasonable probability that the result of the proceeding would have been different if counsel had investigated more thoroughly.

## COUNSELING RECORDS

Before trial, the court denied Anderson's request to compel production of KJ's counseling records. The court made this ruling without reviewing the records in camera to determine their potential relevance. The court reasoned that even an in camera review would be an unjustified intrusion on KJ's privacy. Later, on a defense motion to limit testimony about KJ's counseling experience, the court ruled that the prosecutor could elicit only that counseling led KJ to report the abuse to police. The prosecutor was prohibited from eliciting "any detail about what went on in counseling or what she told the counselor."

At trial, the prosecutor asked KJ "whose idea" it was "to finally go to the police?" KJ responded, "It was actually therapy." Anderson then moved for a mistrial, outside the jury's presence, arguing that there was no way to effectively cross-examine KJ without access to the counseling records. Anderson did not renew his request for in camera review. The court denied the mistrial motion. When the jurors returned, the court instructed them to disregard KJ's last answer.

Anderson argues on appeal that the trial court erred by failing to review the records in camera. We review for an abuse of discretion. State v. Gregory,

16

158 Wn.2d 759, 791, 147 P.3d 1201 (2006), overruled on other grounds, State v. W.R., 181 Wn.2d 757, 768-69, 336 P.3d 1134 (2014).

For due process to justify in camera review of confidential records, as KJ's counseling records are, the defendant must establish a basis for his claim that the record contains material evidence favorable to the defense. Pennsylvania v. Ritchie, 480 U.S. 39, 58 n.15, 107 S. Ct. 989, 94 L. Ed. 2d 40 (1987). Evidence is material only if there is a reasonable probability that it would impact the outcome of trial. Ritchie, 480 U.S. at 57. Mere speculation that records contain material evidence is insufficient. Gregory, 158 Wn.2d at 792; see also State v. Kalakosky, 121 Wn.2d 525, 550, 852 P.2d 1064 (1993) (defendant must make a particularized factual showing that information useful to the defense is likely to be found in the records); State v. Knutson, 121 Wn.2d 766, 773, 854 P.2d 617 (1993) (mere possibility that evidence might have affected the trial outcome is insufficient).

Anderson's relevance arguments below were speculative. During the pretrial hearing, Anderson asserted that he needed to see "what happened at counseling, if the disclosures were consistent, if there's matters for impeachment, or if what she's telling us is true in terms of that this matter was discussed in counseling at all." He did not articulate, with any particularity, why he needed information in the counseling records.

When KJ testified that "therapy" led to her delayed disclosure, Anderson again argued that he needed access to the records for impeachment purposes. But KJ's remark did not establish a basis for Anderson to claim that her

counseling records might contain information inconsistent with her testimony or contain evidence favorable to the defense that was not already known. Before trial, Anderson had the opportunity to have defense counsel interview KJ and ask about her delayed disclosure to police.

In Ritchie and in Gregory, in camera review was warranted because the defendant established a nonspeculative basis to believe the files contained material evidence. Anderson did not make an equivalent showing. The trial court acted within its discretion by denying in camera review.

## COMMUNITY CUSTODY CONDITION

Anderson's sentence includes a community custody provision stating, "Do not frequent areas where minor children are known to congregate, as defined by the supervising Community Corrections Officer." We invalidated an identical condition for vagueness in State v. Irwin, 191 Wn. App. 644, 655, 364 P.3d 830 (2015). The State concedes that the condition should be removed from Anderson's sentence or modified to include specific prohibited locations. We accept this concession.

In summary, we remand for dismissal with prejudice of Anderson's conviction for second degree child molestation in count 1 and for revision of the community custody condition. Otherwise, we affirm.

Becker, J.

WE CONCUR:

Mann, ACJ

18