IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 73401-6-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| CHRISTOPHER ROBIN HOOD, | ) | PUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: September 26, 2016 |

BECKER, J. — The community custody sentencing statute, RCW 9.94A.701, is not ambiguous with respect to which crimes have an 18-month term of community custody. Finding no error in sentencing and holding that it was not manifest constitutional error to use the pattern instruction defining reasonable doubt, we affirm.

FACTS

According to testimony at trial, appellant Christopher Hood was married to LD from 2006 to 2014. As the divorce was being finalized, Hood showed up uninvited at LD's apartment and workplace on several occasions. LD obtained a protection order. On November 21, 2014, LD was preparing to leave for work around 3:45 a.m. When she opened the door, Hood burst in and shoved her against the wall. He pulled a gun from his waistband, hit her with the butt of the

gun two or three times, and held the gun to her head. Hood left when a dog started barking upstairs. LD called the police.

A jury convicted Hood of three crimes of domestic violence as defined under RCW 10.99.020—burglary in the first degree, felony violation of a court order, and stalking. The trial court imposed an exceptional sentence based on the jury's finding of an aggravating factor. Hood appeals.

## REASONABLE DOUBT INSTRUCTION

The court gave the standard reasonable doubt instruction, WPIC 4.01. 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 4.01, at 27 (3d ed. Supp. 2014-15) (WPIC). The instruction reads in relevant part, "A reasonable doubt is one for which a reason exists and may arise from the evidence or lack of evidence." Hood did not object. For the first time on appeal, he argues that it implicitly—and unconstitutionally—requires jurors to be able to articulate reasonable doubt. He claims the instruction undermines the presumption of innocence and shifts the burden of proof in the same way as the fill-in-the-blank arguments that our Supreme Court disapproved in State v. Emery, 174 Wn.2d 741, 760, 278 P.3d 653 (2012).

The State first contends that Hood invited any error that may exist in the pattern instruction. The basic premise of the invited error doctrine is that a party who sets up an error at trial cannot claim that very action as error on appeal and receive a new trial. State v. Momah, 167 Wn.2d 140, 153, 217 P.3d 321 (2009), cert. denied, 562 U.S. 837 (2010). Thus, a party may not request a particular instruction and later complain on appeal that the requested instruction was given.

2

State v. Studd, 137 Wn.2d 533, 546, 973 P.2d 1049 (1999). Invited error prevents review of instructional errors even if they are of constitutional magnitude. City of Seattle v. Patu, 147 Wn.2d 717, 720, 58 P.3d 273 (2002).

Hood responds that the State's claim of invited error is not supported by the record and that if anything his counsel did is interpreted as invited error, then he received ineffective assistance of counsel.

When the court inquired at the beginning of the trial, the prosecution had submitted instructions but the defense had not.

> THE COURT: . . . Let's see. It doesn't look like I've gotten instructions yet. So I'll be needing those—did you submit them?
> [PROSECUTOR]: Yes, I did.
>
> . . . .
>
> THE COURT: . . . Do we have any from the defense?
> [DEFENSE COUNSEL]: No, you don't.
> THE COURT: Okay. Whatever you're going to provide, please do it by tomorrow.

A week later, as the defense was about to rest, the court tentatively promised to provide counsel with a set of proposed instructions by the next morning. The court stated that defense counsel had "stipulated" to the instructions proposed by the State.

> THE COURT: Okay. So it sounds like we'll do—we might do instructions in the morning. We'll probably do closings in the afternoon first thing.
> [PROSECUTOR]: Sounds good.
> THE COURT: All right. One other thing.
> *I wanted to put on the record that counsel has stipulated to the jury instructions submitted by the prosecution.* And I will review those and get a proposed packet back to you. I'll try to do that over the break so we can get those taken care of maybe tomorrow morning. All right?
> You ready?

(Emphasis added.)

The defense rested mid-morning of the next day. The court stated that the defense had "joined" in the State's instructions.

> THE COURT: Okay. Well, I tell you what we'll do. I almost have the instructions ready. I just want to—you did leave out the Assault 1 to convict instruction, at least in the ones that I got, so Teresa is preparing that one. Maybe you filed it, I don't know.
> But in any event—and then I think, *as I understand it, the defense has joined in the submission of the prosecution*, so those should be ready to go. Why don't I instruct the jury after the morning recess, and then we'll recess until—can you be back here at 1:00?

(Emphasis added.)

After the recess, the court and counsel discussed the instructions. Both counsel raised issues with some of the instructions the court was proposing to give. The court made certain modifications. The jury was then called in, and the court read the instructions.

The State bases its claim of invited error on the trial court's statements, quoted above, that Hood "stipulated to" and "joined in" the jury instructions submitted by the State. The premise of the State's argument is that a criminal defendant has an obligation under CrR 6.15(a)[1] to propose jury instructions. The

---

[1] **(a) Proposed Instructions.** Proposed jury instructions shall be served and filed when a case is called for trial by serving one copy upon counsel for each party, by filing one copy with the clerk, and by delivering the original and one additional copy for each party to the trial judge. Additional instructions, which could not be reasonably anticipated, shall be served and filed at any time before the court has instructed the jury.
Not less than 10 days before the date of trial, the court may order counsel to serve and file proposed instructions not less than 3 days before the trial date.

4

State contends that defense counsel efficiently discharged that obligation by choosing to join in the State's proposed instructions rather than generating a set of proposed instructions for the defense, and as a result, Hood should not now be heard to argue that one of the State's proposed instructions is erroneous.

The State's premise is incorrect. CrR 6.15(a) does not impose an obligation to propose jury instructions. If a party wishes to propose instructions, CrR 6.15(a) sets forth the timing and procedure to be followed. See State v. Sublett, 176 Wn.2d 58, 75-76, 292 P.3d 715 (2012). Since it is the State that wishes to secure the conviction, the State ordinarily assumes the burden of proposing an appropriate and comprehensive set of instructions. Just as a defendant has no duty to bring himself to trial, Barker v. Wingo, 407 U.S. 514, 527, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972), a defendant has no duty to propose the instructions that will enable the State to convict him.

It is typical for discussions about jury instructions to occur more than once during the course of a trial. The initial discussions are often somewhat informal and do not need to be held in open court. Sublett, 176 Wn.2d at 75. Often, the trial judge will review various drafts, solicit comments, and strive to isolate, understand, and reduce the areas of disagreement between the parties before producing the final set of instructions that the court proposes to give. Before the

---

Each proposed instruction shall be on a separate sheet of paper. The original shall not be numbered nor include citations of authority.

Any superior court may adopt special rules permitting certain instructions to be requested by number from any published book of instructions.

final instructions are given to the jury, counsel must be given a formal opportunity to object in the absence of the jury. CrR 6.15(c). Any objections to the instructions, as well as the grounds for the objections, must be put on the record to preserve review. Sublett, 176 Wn.2d at 75-76. All of that occurred in this case. Hood did not propose instructions, but he did raise specific objections to the court's set of proposed instructions, and his objections led to changes being made.

It is not clear why the trial court made a point of saying that Hood had "joined in" or "stipulated to" the State's proposed instructions. There is no record of Hood formally stipulating to the correctness of the instructions proposed by the State. The court's remarks may have simply been intended to memorialize the fact that Hood had not proposed a competing set of instructions. In any event, the court's remarks do not provide a basis for holding that Hood specifically invited the court to give the reasonable doubt instruction to which he now assigns error.

In determining whether the invited error doctrine applies, our courts consider "whether the defendant affirmatively assented to the error, materially contributed to it, or benefited from it." In re Pers. Restraint of Coggin, 182 Wn.2d 115, 119, 340 P.3d 810 (2014). "The doctrine appears to require affirmative actions by the defendant." In re Pers. Restraint of Thompson, 141 Wn.2d 712, 724, 10 P.3d 380 (2000). It has been applied when a defendant took knowing and voluntary actions to set up the error. Thompson, 141 Wn.2d at 723-24. For example, in the consolidated appeals examined in Studd, the defendants were

claiming self-defense. Those defendants who proposed a particular self-defense instruction that was accepted by the court and given to the jury were held to have invited the error they claimed on appeal. Studd, 137 Wn.2d at 547. Nothing of the sort occurred in this case. Hood did not affirmatively request any particular instruction. We conclude appellate review of the reasonable doubt instruction is not barred by the doctrine of invited error.

This is not to say that defense counsel can safely ignore the process of developing the instructions in a criminal case. An attorney has an obligation to object to instructions which appear to be incorrect or misleading and must also propose instructions necessary to support argument of the client's theory of the case. Failure to preserve error by objecting in the trial court generally operates as a waiver, RAP 2.5(a), and this case is no exception. Hood contends that despite his failure to object, he may raise the alleged error under RAP 2.5(a)(3) as a manifest error affecting a constitutional right. But the error he alleges was not manifest, i.e., it was not an obvious error that the trial court would be expected to correct even without an objection. State v. O'Hara, 167 Wn.2d 91, 99-100, 217 P.3d 756 (2009). Our Supreme Court has instructed trial courts to use only the pattern instruction. State v. Bennett, 161 Wn.2d 303, 318, 165 P.3d 1241 (2007). The trial court was not obligated to anticipate that the use of WPIC 4.01 would be challenged on appeal as undermining the presumption of innocence.

Although the doctrine of invited error does not bar review, we decline to review Hood's challenge to the reasonable doubt instruction because he did not

object to it at trial and giving the instruction was not manifest constitutional error.

## COMMENT ON THE EVIDENCE

On the charges of burglary and felony violation of a court order, the State alleged the aggravating circumstance that "the offense was part of an ongoing pattern of psychological, physical, or sexual abuse of a victim or multiple victims manifested by multiple incidents over a prolonged period of time." RCW 9.94A.535(3)(h)(i). In the second phase of a bifurcated trial, the jury found the allegation proven.

Using a pattern instruction, the court instructed the jury that "the term 'prolonged period of time' means more than a few weeks." WPIC 300.17. The State concedes that this instruction constituted an improper comment on the evidence. State v. Brush, 183 Wn.2d 550, 559, 353 P.3d 213 (2015). But the error was harmless. The evidence showed that Hood committed domestic abuse in several incidents occurring over a period from 1999 to 2014. Whether that was a prolonged period of time was not a contested issue. If the jurors believed the evidence of the prior domestic abuse, they could not have failed to find that the domestic abuse occurred over a prolonged period of time. Thus, the erroneous instruction was not prejudicial. See State v. Levy, 156 Wn.2d 709, 721-22, 726, 132 P.3d 1076 (2006). There is no reversible error.

## OFFENDER SCORE

The court sentenced Hood to an exceptional sentence totaling 156 months. The exceptional sentence was due to the aggravating circumstance of an ongoing pattern of abuse.

Hood contends that the trial court should have granted his request to classify the two convictions as the same criminal conduct. To do so would have lowered his offender score and potentially lowered the length of the exceptional sentence.

The defendant bears the burden at trial to show that current offenses encompass the same criminal conduct. State v. Graciano, 176 Wn.2d 531, 539-40, 295 P.3d 219 (2013). Our review is for abuse of discretion or misapplication of the law. Graciano, 176 Wn.2d at 536.

"Same criminal conduct" means "two or more crimes that require the same criminal intent, are committed at the same time and place, and involve the same victim." RCW 9.94A.589(1)(a). Hood argues that both crimes required the same criminal intent—the intent to assault LD. The sentencing court could have reasonably taken a different view of the evidence. Hood violated the no-contact order when he approached the condo where LD lived. Having heard testimony about past vandalism of the condo, the trial court could have reasonably found that Hood did not necessarily intend an assault when he approached the condo. The court may have found that he developed the intent to commit an assault inside—the conduct that constituted the burglary—only after entering. We conclude the trial court did not abuse its discretion in finding that Hood did not meet his burden to show that his criminal intent was the same for each crime.

COMMUNITY CUSTODY TERM

At Hood's sentencing, the trial court imposed a term of 18 months of community custody under RCW 9.94A.701. Hood did not object to the length of

the term at that time. On appeal Hood contends the statute is ambiguous as to the length of the community custody term for burglary in the first degree.

A challenge to a sentence that is contrary to law may be raised for the first time on appeal. State v. Anderson, 58 Wn. App. 107, 110, 791 P.2d 547 (1990). Questions of statutory interpretation are questions of law subject to de novo review. State v. Franklin, 172 Wn.2d 831, 835, 263 P.3d 585 (2011).

The goal of statutory interpretation is to discern and implement the legislature's intent. State v. Armendariz, 160 Wn.2d 106, 110, 156 P.3d 201 (2007). In interpreting a statute, we first look to the statute's plain language. Armendariz, 160 Wn.2d at 110. Where the plain language of the statute is subject to more than one reasonable interpretation, it is ambiguous. Armendariz, 160 Wn.2d at 110. To determine the plain meaning of a statute, the court looks to the text, the context of the statute in which the provision is found, related provisions, and the statutory scheme as a whole. State v. Jones, 172 Wn.2d 236, 242, 257 P.3d 616 (2011).

In relevant part, the statute provides:

> (1) If an offender is sentenced to the custody of the department for one of the following crimes, the court shall, in addition to the other terms of the sentence, sentence the offender to community custody for three years:
>      . . . .
>      (b) A *serious violent offense*.
>      (2) A court shall, in addition to the other terms of the sentence, sentence an offender to community custody for eighteen months when the court sentences the person to the custody of the department for a *violent offense that is not considered a serious violent offense*.

>   (3) A court shall, in addition to other terms of the sentence, sentence an offender to community custody for one year when the court sentences the person to the custody of the department for:
>   (a) Any *crime against persons* under RCW 9.94A.411(2).

RCW 9.94A.701 (emphasis added).

Burglary in the first degree is a "violent offense." See RCW 9.94A.030(55)(i) ("violent offense" means "any felony defined under any law as a class A felony"); RCW 9A.52.020(2) ("Burglary in the first degree is a class A felony"). Thus, it falls within RCW 9.94A.701(2), which requires a community custody term of 18 months for a violent offense. But burglary in the first degree is also a "crime against persons" under RCW 9.94A.411(2). It therefore also falls within RCW 9.94A.701(3)(a), which requires a community custody term of 12 months for a crime against persons. Hood contends the legislature created an ambiguity by placing the crime of first degree burglary in two different categories and that the ambiguity must be resolved by shortening his term of community custody to 12 months in accordance with the rule of lenity.

Burglary in the first degree is not the only crime that falls into more than one category. "Serious violent offenses" and "violent offenses" are listed at RCW 9.94A.030(46) and (55), respectively. Many, if not most, of the crimes on the "serious violent offense" and "violent offense" lists are also listed as "crimes against persons" under RCW 9.94A.411(2).

Statutes must be interpreted and construed so that all language used is given effect, with no portion rendered meaningless or superfluous. State v. J.P., 149 Wn.2d 444, 450, 69 P.3d 318 (2003). If we adopted Hood's interpretation of the statute, RCW 9.94A.701(1)(b) and (2) would be rendered largely superfluous

11

because many "serious violent offenses" and "violent offenses" could only be punished with 12 months of community custody instead of the 3 years or 18 months the legislature prescribed in subsections (1)(b) and (2).

The statute sets up a tiered step-down sentencing structure depending on the seriousness of the crime: 3 years of community custody is imposed for "serious violent offenses"; 18 months for "a violent offense that is not considered a serious violent offense"; and 12 months for crimes against persons. RCW 9.94A.701(1)(b), (2), (3)(a). The statutory scheme as a whole establishes that the legislature intended for individuals who commit violent offenses to receive a longer term of community custody than individuals who commit nonviolent crimes against persons. This is consistent with the legislature's purpose to "ensure that the punishment for a criminal offense is proportionate to the seriousness of the offense and the offender's criminal history." RCW 9.94A.010(1).

For crimes that are listed as both serious violent offenses and violent offenses, the legislature eliminated the appearance of ambiguity by stating that the court shall sentence an offense to 18 months of community custody for a "violent offense that is not considered a serious violent offense." RCW 9.94A.701(2). Hood points out that the legislature did not include this type of clarifying language in RCW 9.94A.701(3)(a) for crimes that are listed both as violent offenses and crimes against persons. Therefore, he argues, it is not clear that the legislature intended an offense listed as both a violent offense and a crime against persons to be punished as a violent offense.

We disagree. The clarifying language in subsection (2) is more accurately

viewed as an expression of the legislature's intent to create a tiered step-down sentencing structure, as detailed above. To determine the plain meaning of subsection (3)(a), it should be interpreted in a way that is consistent with the overall statutory scheme.

We conclude RCW 9.94A.701 is not ambiguous as to the length of the community custody term for burglary in the first degree. The only reasonable reading of RCW 9.94A.701 is that it requires a term of 18 months of community custody for a violent offense that is not considered a serious violent offense, even if it is also a crime against persons. Because the potential ambiguity can be reconciled in a way that reflects the legislature's clear intent, we do not apply the rule of lenity. State v. Oakley, 117 Wn. App. 730, 734, 72 P.3d 1114 (2003), review denied, 151 Wn.2d 1007 (2004). The trial court correctly applied RCW 9.94A.701(2) and sentenced Hood to 18 months of community custody for first degree burglary.

## APPELLATE COSTS

In his opening brief, Hood asks us not to impose appellate costs in the event that the State prevails on appeal and seeks costs. The State does not respond. Under RCW 10.73.160(1), this court has discretion to decline to impose appellate costs on appeal. State v. Sinclair, 192 Wn. App. 380, 385, 388, 367 P.3d 612, review denied, 185 Wn.2d 1034 (2016). In light of Hood's indigent status, our presumption under RAP 15.2(f) that he remains indigent "throughout the review," and the State's failure to respond, we exercise our discretion not to impose appellate costs.

Affirmed.

_____ Becker, J.

WE CONCUR:

_____ Trickey, A.C.J.

_____ Cox, J.