

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 37634-6-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SARAH JESSICA PORTER, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, J. — Sarah Porter appeals convictions for felony harassment and felony violation of a protection order. She challenges the sufficiency of the evidence, alleged instructional error, and the admission of certain evidence. We find no error or abuse of discretion and affirm.

FACTS AND PROCEDURAL BACKGROUND

Sarah and Michael Porter were married for seven years before divorcing in 2015. Ms. Porter was awarded sole custody of their twin children for several years. Michael[1] struggled during the marriage and for a time thereafter with brain damage from an injury sustained while in the military, but he obtained treatment, and sometime in 2018, he was awarded visitation with the children. Ms. Porter refused to follow the court's visitation order, leading to sole custody of the children being awarded to Michael in September 2018.

Concerning behavior by Ms. Porter escalated the day Michael assumed custody. He picked up the children from school and drove to his home, where Ms. Porter was trying to break in. Upon Michael's arrival with his parents and the children, and the arrival in a separate car of his girlfriend and her children, Ms. Porter attacked all of them, physically assaulting Michael and his father.

Michael had sought a protection order for himself a couple of months earlier, and after the attack, he sought and obtained an order that protected the children as well. The protection order prohibited Ms. Porter from (among other things), contacting Michael or the children directly or indirectly, attempting or threatening to cause them bodily injury,

---

[1] Given the common last name, we refer to Michael Porter by his first name for ease in reading. We intend no disrespect.

or knowingly coming within 1,000 feet of their home or Michael's workplace. Ms. Porter continually failed to abide by the protection order.

In June 2019, on what was the children's birthday, Ms. Porter called 911 and requested a welfare check of Michael's home. Among her requests of the dispatcher was to "[m]ake sure [officers] do a search." Report of Proceedings (RP) at 270. The 911 dispatcher relayed the information to Officer Jason Ramsey, who called Ms. Porter to follow up. Officer Ramsey would later testify it was not uncommon for Ms. Porter to request welfare checks on her children. Officer Ramsey's supervisor, Corporal Josh Ingraham would testify similarly, estimating that although he was only one of 27 officers in the Ellensburg Police Department, he had personally had 15 to 20 contacts with Ms. Porter about her concerns for her children or something concerning Michael.

When Officer Ramsey called Ms. Porter on June 2, Ms. Porter explained to the officer that Michael was supposed to have turned in his weapons and she believed he still had weapons in the home. Officer Ramsey spoke to Corporal Ingraham about the call. Satisfied that Ms. Porter's concerns about Michael's weapons had been taken care of previously, no one from the department performed the welfare check and search she had requested.

Later in the day, Ms. Porter called 911 a second time. It is uncontested that Ms. Porter was screaming during the second phone call. She was understood by police department personnel to threaten to kill Mr. Porter.

Even later in the day, 911 was contacted with a request to perform a welfare check on Ms. Porter. Reportedly, she was making statements about self-harm and harming others. Corporal Ingraham and Officer Ramsey sought to locate her based not only on that report, but also on two other citizen reports to 911 of erratic behavior by a woman meeting Ms. Porter's description, and which turned out to be her. The citizen callers reported seeing a woman in the middle of the road, seemingly trying to be hit by cars, and at one point throwing a brick-sized rock at a car.

Corporal Ingraham and Officer Ramsey located Ms. Porter, handcuffed her, and transported her to the Kittitas Valley Hospital to have her evaluated by mental health professionals. Corporal Ingraham then contacted Michael to let him know of Ms. Porter's threats against him. Michael had already received a call from a 911 dispatcher informing him of Ms. Porter's threats.

Ms. Porter was charged with felony harassment (threat to kill) and felony violation of a protection order.

Before trial, defense counsel raised a concern about Michael testifying to the couple's contentious history other than Ms. Porter's two prior convictions for violating orders. The State was required to prove the prior convictions as an element of the felony violation of a protection order charge. The State responded that to establish felony harassment it was required to prove Michael's reasonable fear that the threat would be carried out, so it intended to offer some evidence of the couple's deteriorated relationship

4

and Ms. Porter's escalating behaviors. The trial court declined to issue a ruling, stating it would "see how the questions are asked and how the answers come out." RP at 38.

During trial, the State offered an audio recording of all the 911 calls. The defense had no objection. Indeed, in opening statement, defense counsel told jurors, "[Y]ou're going to hear, and I hope, and I pray that you will listen very carefully to the evidence that's admitted as I anticipate the State will play the 9-1-1 call, which is actually what she said." RP at 191. The recording of the calls was admitted as exhibit 2 and was played for jurors once during the trial.

Ms. Porter raised no objections to the State's proposed jury instructions. At the conclusion of the evidence, the trial court read its instructions to the jury and, according to the verbatim report of proceedings, mistakenly inserted the word "or" in reading the elements instruction for the felony violation of a protection order charge. The defense did not object.

In closing argument, the lawyers disagreed about what Ms. Porter could be heard saying in the critical, second recorded call to 911. The prosecutor began her closing argument:

> [PROSECUTOR]: Thank you. Kill Michael Porter. Kill Michael Porter. It's the first things you hear on the 9-1-1 call. And I know it's hard to hear, especially here in court and listening for the first time. You will— you will have the 9-1-1 calls to listen to, as admitted exhibits, and I encourage you to listen to them.

Repeatedly Sarah Porter says kill Michael Porter. Get my kids for me. Kill them for me, would you? Kill Michael Porter. Kill him. He should have done it himself. I should have done it. I'm not the bad guy, but I will fucking do it. Kill Michael Porter. I am going to kill someone.

These are all direct quotes from the 9-1-1 call that Sarah Porter made, of her own accord, to KittCom[2] on June 2nd, 2019 . . . .

. . . .

Now, defense, in—in his opening statements, said you listen to the 9-1-1, don't believe the prosecutor. And I agree with [defense counsel] 100%. Don't go by my words to find Sarah Porter guilty, go by her words because she's the one that called 9-1-1 and said over and over again that she wanted to kill Michael Porter. She wanted him killed. That she was going to kill him.

[DEFENSE COUNSEL]: Objection. Facts not in evidence.

THE COURT: Alright. The jury will decide what the facts are in this case.

[PROSECUTOR]: The facts are as indicated by Sarah Porter's words on the 9-1-1 call. Just because [defense counsel] couldn't hear what Sarah Porter said or that he disagrees with it, doesn't mean that you can't. Listen to the 9-1-1 call. The 9-1-1 operator, Officer Ingraham, everyone who heard it agreed, and—and you can agree too by when you listen to the evidence for yourself. Don't take my word for it, listen to the evidence. It's on there. I'm going to kill someone. Direct quote in the fourth phone call at fifty seconds in. Kill Michael Porter—those are the first things she says on there.

RP at 315-17. In defense counsel's closing argument, he responded:

[A]s we talked about in jury instruction—or in *voir dire*, you guys just get the snapshot, and you have to decide what happened that day. Okay? It's not how I hear it; it's not how the State hears it; it's how you hear it. It's how you decide what happened that day and whether or not my client threatened to kill Michael Porter. I would beg you and implore you, don't

---

[2] KITTCOM is a 911 center that serves public safety agencies in Kittitas County. *See* www.kittcom.org/ (last visited Dec. 9, 2021).

6

just listen to the one tape that we've been focused on. Listen to all of the
tapes to see what she said. Was there ever any intent to kill Michael Porter
that day?

RP at 326. Later, defense counsel said,

If she is calling 9-1-1, is she evidencing a serious expression that she
wants to go kill him? Wouldn't that be the last people you were going to
say that to? This is a cry for help. She had talked to them, as Officer
Ingraham testified, several times. Numerous times. And she continued to
talk to them and was trying to get their attention to get some help. That's
what this was. Listen to the tape. You will hear that. It wasn't all directed
at Michael Porter. She said she was going to stab herself in the head.

RP at 328.

Jurors were excused to begin deliberations at 9:58 a.m. They had reached a

verdict and the parties had reconvened by 11:26 a.m. The jury found Ms. Porter guilty as

charged. She appeals.

## ANALYSIS

Ms. Porter challenges the sufficiency of the evidence, complains of instructional

error, and contends that the trial court abused its discretion in allowing excessive

evidence that should have been excluded under ER 403 or 404.

I.   SUFFICIENCY CHALLENGE

To convict Ms. Porter of felony harassment under RCW 9A.46.020, the State was

required to prove 1) she knowingly threatened to kill Michael; and 2) her words or

conduct placed Michael in reasonable fear that the threat to kill would be carried out.

RCW 9A.46.020(2)(b)(ii); *State v. C.G.*, 150 Wn.2d 604, 607, 80 P.3d 594 (2003). Ms.

Porter's first and second assignments of error contend that the State's evidence of these two elements was insufficient.

"Under both the federal and state constitutions, due process requires that the State prove every element of a crime beyond a reasonable doubt." *State v. Johnson*, 188 Wn.2d 742, 750, 399 P.3d 507 (2017). In reviewing a claim for insufficient evidence, we consider "'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* at 751 (quoting *State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980)). "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). "[A]ll reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant." *Id.* We defer to the fact finder on the resolution of conflicting testimony, credibility determinations, and the persuasiveness of the evidence. *State v. Thomas*, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004).

Central to Ms. Porter's argument of evidence insufficiency are gaps in the part of the verbatim report of proceedings of the trial that reports the playing of the exhibit 2 recording of the 911 calls. Ms. Porter argues that it cannot be determined from the verbatim report of the trial whether she ever made a threat at all, given many parts of the playing of the recording that are designated "inaudible" and "muffled." But the *evidence*

8

of the 911 call was not the verbatim report created after the trial was over. It was exhibit 2. Ms. Porter failed to designate exhibit 2 as part of the record on appeal. *See* Index, Designation of Clerk's Papers, *Washington v. Porter*, Ct. of Appeals No. 37643-6-III (July 21, 2020) (on file with court).

"The party presenting an issue for review has the burden of providing an adequate record to establish such error." *State v. Sisouvanh*, 175 Wn.2d 607, 619, 290 P.3d 942 (2012). "In general, '[a]n insufficient record on appeal precludes review of the alleged errors.'" *Cuesta v. Emp't Sec. Dep't*, 200 Wn. App. 560, 568, 402 P.3d 898 (2017) (alteration in original) (quoting *Bulzomi v. Dep't of Labor & Indus.*, 72 Wn. App. 522, 525, 864 P.2d 996 (1994)). We "will 'decline to address a claimed error when faced with a material omission in the record.'" *Id.* (quoting *State v. Wade*, 138 Wn.2d 460, 465, 979 P.2d 850 (1999)).

We can see from closing argument that the lawyers and trial court agreed the jurors should listen to exhibit 2 and, from that, determine for themselves whether Ms. Porter made a threat to kill Michael. Before being excused for their deliberations, jurors were squarely presented with the parties' positions. To paraphrase the closing arguments, they heard from the State, "listen to exhibit 2 and you will hear her make threats;" they heard from the defense, "listen to exhibit 2 and you will not hear a threat." It did not take long for them to reach a verdict.

We will not rely on a verbatim report of the audio evidence that we have every reason to believe is inferior to the audio evidence itself: what jurors would have heard by listening to exhibit 2. The verbatim report is based on what the reporter was able to hear the one time the recording was played in court. And it might have been played from a location that disadvantaged the court reporter, since the primary concern would have been the ability of the jurors to hear it. Exhibit 2 could have, and according to the jury's verdict, did include intelligible threats to kill Michael, and it is not in our record. Given Ms. Porter's failure to provide the necessary record, we decline to consider her evidence sufficiency challenge.

Ms. Porter's only other sufficiency challenge is that Michael's testimony belies the contention that he believed the threat. She quotes the following trial testimony:

> Q. Okay. Are you afraid that Sarah could kill you now if she were to threaten you?
>
> A. I—with her—with where her mental state's been, with the behavior she's shown, it's just—I have no idea and it does scare me.

Br. of Appellant at 19 (quoting RP at 229-30). Ms. Porter does not include Michael's entire answer. He continued, "It does scare our children. We've done everything we can to move from the previous address to a confidential location." RP at 230.

Ms. Porter likens Michael's statement that he has "no idea" what Ms. Porter could do to evidence in *C.G.* that was held to be insufficient proof that the victim was placed in reasonable fear. In *C.G.*, the Washington Supreme Court held that reasonable fear was

10

not proved by evidence that a school principal was "cause[d] . . . concern" by a student's statement, his concern being that C.G. "might try to harm him or someone else in the future." 150 Wn.2d at 607. The insufficiency of the evidence in *C.G.* was because the principal expressed no concern about C.G. carrying out her threat to kill, only a concern about the possibility of future bodily harm to someone. The court held that concern about someone being killed must be shown.

Michael's testimony on which Ms. Porter relies *was* a concern about being killed, not bodily harmed ("are you afraid that Sarah could kill you now" (RP at 229)), so *C.G.* does not apply. Michael also testified that on days with family significance, Ms. Porter had exhibited "[e]motional actions that are unusual or very extreme or scary." RP at 233. A victim need not testify that he believes the defendant *will* kill him. Evidence that the person threatened was "scared" is sufficient. *State v. Trey M.*, 186 Wn.2d 884, 905-06, 383 P.3d 474 (2016).

And, as always, circumstantial evidence carries the same weight as direct evidence. *Id.* at 905. Michael testified that when he was awarded sole custody of the children, Ms. Porter broke into his home and attacked him and his father. He testified he obtained an order of protection from Ms. Porter, which Ms. Porter continually violated. He testified that Ms. Porter was capable of carrying out threats and that he and the children had made changes to their lives based on a fear of Ms. Porter. The evidence that he reasonably feared the threat to kill would be carried out is sufficient.

11

II.     ASSIGNMENT OF ERROR TO THE TRIAL COURT'S INSTRUCTIONS ON "THREAT"

Ms. Porter next contends that the jury instructions incorrectly defined the term

"threat" for purposes of the felony harassment charge.  The definitional instruction,

instruction 10, stated:

> Threat means to communicate, directly or indirectly, the intent to cause bodily injury in the future to the person threatened or to any other person.
> To be a threat, a statement or act must occur in a context or under such circumstances where a reasonable person, in the position of the speaker, would foresee that the statement or act would be interpreted as a serious expression of intention to carry out the threat rather than as something said in jest or idle talk.

Clerk's Papers (CP) at 110.  The instruction was based on the pattern definition

instruction for "threat," which is based in turn on the statutory definition of

"threat" in the Washington Criminal Code.  11 WASHINGTON PRACTICE: PATTERN

JURY INSTRUCTION: CRIMINAL § 2.24, at 81-82 (5th ed. 2021) (WPIC); RCW

9A.04.110(28).  Defense counsel did not object to the instruction at trial.  Ms.

Porter does not identify any respect in which it deviates from the language in the

pattern instruction that is to be used in harassment prosecutions.

For the first time on appeal, Ms. Porter argues that "[t]he trial court's instruction

only requires intent to cause bodily injury, however the felony statute which Ms. Porter

was charged and convicted [sic] required threat to kill."  Br. of Appellant at 23.  But the

definition instruction did not tell jurors what type of threat the State was required to

12

prove for its charge. Other instructions did. Instruction 9, the elements instruction, told jurors that to convict Ms. Porter it must be proved beyond a reasonable doubt (among other elements) that she "knowingly threatened to kill Michael Porter immediately or in the future," and that her words or conduct put Michael in reasonable fear "that the threat to kill would be carried out." CP at 109. Instruction 8, which described the crime of harassment, stated it is committed when a person knowingly threatens to cause bodily injury to another person, adding, "and the threat to cause bodily harm consists of a threat to kill the threatened person or another person." CP at 108.

Failure to object to a jury instruction in the trial court generally operates as a waiver of the issue on appeal. *State v. Hood*, 196 Wn. App. 127, 135, 382 P.3d 710 (2016); RAP 2.5(a). While appellate courts may review an unchallenged error if the appellant can demonstrate it was manifest error affecting a constitutional right, RAP 2.5(a)(3), errors in the pattern jury instructions generally do not rise to the level of "manifest." *Hood*, 196 Wn. App. at 135.

In any event, no error is shown. "Instructions satisfy the requirement of a fair trial when, taken as a whole, they properly inform the jury of the applicable law, are not misleading, and permit the defendant to argue his theory of the case." *State v. Tili*, 139 Wn.2d 107, 126, 985 P.2d 365 (1999), *aff'd*, 148 Wn.2d 350, 60 P.3d 1192 (2003). The criminal code's definition of "threat" applies to a number of crimes, including harassment. To prove gross misdemeanor harassment and a number of other crimes, the

13

threat need not be one to kill. *E.g.*, RCW 9A.46.020(1). The State was required to prove a threat to kill here, because it charged felony harassment under RCW 9A.46.020(2)(b). But it reasonably proposed, and the trial court reasonably gave the criminal code definition of "threat" without alteration, because the court's other instructions made clear that a particular type of threat was required to prove the crime charged.

III.     MISREADING OF ELEMENTS INSTRUCTION

Ms. Porter next contends she was denied her right to a unanimous jury verdict when the trial court, while reading its instructions to the jury at the conclusion of the evidence, misread the elements instruction for the charge of felony violation of a protection order.

The court's written instructions correctly informed the jury that to find Ms. Porter guilty of violating a court order it had to find, among other elements, "(3) [t]hat on or about said date, the defendant knowingly violated a provision of this order; (4) [t]hat the defendant had twice been previously convicted for violating the provisions of a court order; and (5) [t]hat the defendant's act occurred in the State of Washington." CP at 112.

In reading the instruction, however, the trial court inserted an "or" between the third and fourth elements, reading, "[t]hat on or about said date the defendant knowingly violated a provision of this order, *or* . . . [t]hat the defendant had twice been previously convicted for violating a provisions [sic] of a court order." RP at 310-11 (emphasis added) (alteration in original). It continued,

14

> If you find from the evidence that elements (1.), (2.), (3.), (4.) and (5.) have been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty.
>
> On the other hand, if, after weighing all of the evidence you have a reasonable doubt as to any one of five elements, then it will be your duty to return a verdict of not guilty.

RP at 311. Neither party objected to the misreading of the instruction.

Here again, we need not review a claimed error when the appellant fails to object in the trial court. Ms. Porter contends that the error was manifest constitutional error reviewable under RAP 2.5(a)(3), however. Citing *State v. Mills*, 154 Wn.2d 1, 109 P.3d 415 (2005), she contends it was a failure to instruct the jury on every element of the crime charged. For us to find manifest constitutional error, there must be a "'plausible showing by the [appellant] that the asserted error had practical and identifiable consequences in the trial of the case.'" *State v. A.M.*, 194 Wn.2d 33, 38, 448 P.3d 35 (2019) (alteration in original) (internal quotation marks omitted) (quoting *State v. O'Hara*, 167 Wn.2d 91, 99, 217 P.3d 756 (2009)).

Contrary to Ms. Porter's argument, however, the jury *was* instructed on every element of the crime, both in the court's written instructions and in its oral instruction that the jury must find "that elements (1.), (2.), (3.), (4.) and (5.)" have been proved beyond a reasonable doubt, and must return a verdict of not guilty if it has "a reasonable doubt as to any one of [the] five elements." RP at 311. The error was not a failure to instruct, it was a misreading of the written instructions. Nothing in the record suggests

the trial court's misreading actually prejudiced Ms. Porter or had practical and identifiable consequences in the trial. *And see State v. Smissaert*, 41 Wn. App. 813, 815 n.1, 706 P.2d 647 (1985) ("[The defendant] complains that the trial court misread the instruction. Nothing was said about it to the trial court and the correct instruction was given to the jury to read. The error, if any, was harmless.").

The court's error in reading the instruction was not manifest constitutional error and was not preserved.

IV.    ALLEGED ERROR UNDER ER 403 AND 404(b)

Finally, Ms. Porter contends the trial court abused its discretion when it "allow[ed] excessive evidence of other bad acts, in violation of ER 404 and ER 403." Br. of Appellant at 2. Notably absent from her assignment of error is the identification of any defense objection that was overruled.

When it comes to the failure to object to *evidence* in the trial court, an appellant encounters not only the error preservation requirement of RAP 2.5(a), but ER 103(a)(1), which provides that "[e]rror may not be predicated upon a ruling which admits . . . evidence unless a substantial right of the party is affected, and . . . a timely objection or motion to strike is made, stating the specific ground of objection, if the specific ground was not apparent from the context." Ms. Porter's trial lawyer raised a pretrial concern about the extent of Ms. Porter's prior conduct that might be offered to establish Michael's reasonable fear, but since some of that conduct would likely prove admissible, the trial

court reserved ruling. "When a trial court makes a ruling 'subject to [the] evidence [to be] developed at trial, the parties are under a duty to raise the issue at the appropriate time with proper objections at trial.'" *State v. Roosma*, ___ Wn. App. 2d ___, 498 P.3d 59, 63 (2021) (alterations in original) (quoting *State v. Koloske*, 100 Wn.2d 889, 896, 676 P.2d 456 (1984), *overruled on other grounds by State v. Brown*, 113 Wn.2d 520, 782 P.2d 1013 (1989)). An evidentiary error such as the erroneous admission of ER 404(b) evidence is not of constitutional magnitude, nor is it manifest. *State v. Powell*, 166 Wn.2d 73, 84, 206 P.3d 321 (2009).

Ms. Porter did not raise any ER 403 or 404 objections when the State predictably questioned Michael about the history with his ex-wife that caused him fear. Defense counsel objected to evidence of any *order violations* beyond what had been stipulated to, to which the prosecutor responded, "Okay," and asked no further questions about order violations. RP at 231. Defense counsel objected when the prosecutor asked Michael if he believed Ms. Porter was capable of carrying out her threats, but he stated no basis for the objection and quickly withdrew it.

A trial court does not err or abuse its discretion by "*allowing* excessive evidence of . . . bad acts," when no objection is made. Br. of Appellant at 2 (emphasis added).

17

Affirmed.[3]

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Siddoway, J.

WE CONCUR:

_____
Pennell, C.J.

_____
Lawrence-Berrey, J.

---

[3] Ms. Porter also assigns error under the cumulative error doctrine, which applies when multiple preserved, but individually harmless errors, combine to deny the defendant a fair trial. *State v. Lazcano*, 188 Wn. App. 338, 370, 354 P.3d 233 (2015). Ms. Porter raises no preserved error, so the doctrine does not apply.