IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 40198-7-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| TODD DAVID DRESSLER, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

FEARING, J. — Todd Dressler appeals his convictions for two counts of indecent liberties, one count of third degree rape, one count of second degree incest, and one count of first degree incest. He contends the trial court committed prejudicial error when excluding evidence that alleged victim E.H. previously made false allegations that he violated a pretrial no-contact order. Because the trial court did not abuse its discretion when excluding the evidence, we affirm the convictions.

FACTS

This appeal arises from the prosecution of Todd Dressler for the alleged molestation of his step-daughter, E.H, beginning in 2020. E.H. is the daughter of Kari Deford. Dressler and Deford married in November 2008. We take the facts from trial testimony.

At the time of the marriage between Todd Dressler and Kari Deford, Deford raised two children from an earlier marriage—four-year-old female E.H. and five-year-old male D.H. Dressler and Deford begat four children together: B.D., Ca.D., D.D., and Cy.D. Deford homeschooled the children, while Dressler labored as a nurse.

The Dressler and Deford family relocated to Moses Lake in 2013 and, in October 2014, moved into a house on Harrington Lane. At trial, E.H. declared that incidents of molestation occurred at this house. Although the State charges focused on the year 2020, the first incident occurred around 2018 when Dressler began kissing her as she slept on an air mattress in the living room and she awoke and shoved him away. Thereafter E.H. regularly awoke to find Dressler in bed with her, cuddling and grabbing her chest. On one occasion, she awoke due to discomfort and discovered Dressler's finger inside her vagina. When she stirred, he removed his finger, pulled up her pajama bottoms, and left without saying a word. During the daytime, Dressler occasionally patted and pinched her buttocks and embraced her from behind while she washed dishes. Kari Deford saw and grew angry at this conduct.

In 2019, Dressler converted the home into an adult family home. Step-son D.H. went to live with his maternal grandparents in Walla Walla. In July 2020, the rest of the seven-member Dressler family moved into a 38-foot motorhome.

2

In early August 2020, the Dressler and Deford family moved the motorhome to the property of acquaintances and parked adjacent to a shop building. Electricity, water, and a toilet served the home. Dressler and Deford slept in the rear bedroom. The youngest child, Cy.D., slept in a bassinet near the bathroom, Ca.D. slept on a convertible sofa bed, E.H. and her brother B.D. shared a queen-size inflatable mattress lying foot-to-foot, and D.D. slept in a playpen in the kitchen area. Blackout curtains covered all the windows except the front windshield. Blinds darkened the windshield and rendered the interior of the home "pitch black" at night. Rep. of Proc. (RP) at 717. Deford ran a fan during the night to generate white noise and prevent the children from waking due to movement or sound.

On August 16, 2020, while E.H. slept on her side, she felt what she believed to be ejaculate strike her from behind. She then heard step-father Todd Dressler return to the bedroom area of the motorhome. Later that night, E.H. awoke from a dream of being molested and discovered Dressler's hand on her vagina, over the top of her pajamas. After E.H. awoke, Dressler left the motorhome. E.H., in turn, informed her mother of the molestation. In the early morning hours of August 17, Kari Deford, at the urging of her pastor, called law enforcement.

Later that same morning, Grant County Sheriff's Deputy Joe Wester responded to Kari Deford's call to law enforcement. Todd Dressler returned home while Deputy Wester was present. Dressler's return visibly upset E.H.

Deputy Joe Wester arrested Todd Dressler. After his arrest, Dressler told Deputy Wester of a lack of intimacy between him and his wife. Dressler asserted that the night before, he masturbated in the bathroom and on exiting the bathroom, he stumbled and somehow ejaculate landed onto E.H. He denied ever touching E.H. inappropriately.

E.H. went to Moses Lake's Deaconess Hospital, where Sexual Assault Nurse Examiner, Sheila Ibarra examined her. E.H. reported her belief that her step-father ejaculated on her face and chest. She also recounted waking from a dream about being molested to find Dressler touching her genitals, at which point she slapped his hand away. Ibarra collected swabs from the face and chest. Nurse Ibarra detected no physical injuries or signs of trauma.

On August 17, 2020, Grant County Detective Jack Fisher interviewed E.H. at Kids Hope, an advocacy center for children. During the interview, E.H. limited Todd Dressler's sexually inappropriate conduct to the night of August 16, 2020.

The State of Washington charged Todd Dressler, in district court, with misdemeanor assault involving domestic violence and a sexual motivation allegation. The court issued a no-contact order barring Dressler from contacting E.H.

4

Following his release from custody, Todd Dressler prepared a letter for the family

pastor to deliver to Kari Deford. In it, Dressler asked his wife for forgiveness and

promised to devote his life to the Lord:

> It has been a couple days since I was arrested, and I believe God
> used this to begin breaking me down. It has been worse and worse every
> day, but reading my Bible and Praying has led me to so many insights in
> the last two days about my life. I realize I need to rebuild my life on the
> right foundation, Jesus. This time has led to me beginning to confess areas
> where I have failed and to choose to surrender my life to God. I also want
> to be completely honest with you.

Ex. 33. The prosecution read the letter to the jury at trial.

In his letter to his wife, Todd Dressler admitted to neglecting date nights, failing to

make his wife a priority, secretly undermining her parenting, falling short in his role as a

spiritual leader, and being dishonest about finances. He acknowledged a struggle with

masturbation. He rendered his account of the events of August 16, 2020, which led to his

arrest:

> I also masturbated in our bed on Sunday night when everything
> happened. I caught the semen in my hand to keep it from going on the
> sheets, and then decided to sneak out of the motorhome to clean it off. I
> was afraid I would wake you up and you would find out what I had done if
> I tried to clean it up in the bathroom or the sink. On my way out, I tripped
> on the shoe box and landed between the bed and the sofa. The semen
> which was in my left hand came out when I tripped and I didn't know
> where it went. I felt around in the dark to see if I could quickly find it to
> clean it up but I couldn't. I then went to change out of my pajamas to leave
> for the [Adult Family Home]. There was no thought or attempt to mess
> around with or molest [E.H.]

. . . .

Being arrested and facing charges has humiliated me and led me to be broken and take responsibility for my actions. I am surrendering to God to let Him rebuild how He wants me to be.

Ex. 33.

While Todd Dressler awaited resolution of the misdemeanor charges, E.H. repeatedly accused him of violating the no-contact order. Many of these allegations originated with Kari Deford, not E.H. E.H. identified multiple dates and times when she saw Dressler while she attended class at Crestview Christian School. Defense counsel later submitted photographs to the State showing Dressler to be in Bellingham visiting friends during the times E.H. alleged the violations occurred.

Weeks after E.H.'s interview at Kids Hope, she wrote a letter to Detective Jack Fisher, apologizing for not being truthful during the earlier interview. In a second interview with Detective Fisher, E.H. disclosed additional instances of abuse by Todd Dressler. She related Dressler ejaculating on her face numerous times when she slept on a mattress in the family room of the Harrington Lane house. She wiped the semen off her face on to the mattress. E.H. also reported that Dressler inserted his finger inside her vagina.

Detective Jack Fisher submitted for DNA testing the swabs collected by Nurse Ibarra from E.H.'s face and chest, swabs from suspected semen stains on the air mattress

in the motorhome, and the mattress E.H. used in the Harrington Lane house. Detective Fisher also gathered a buccal swab from Todd Dressler for comparison.

The laboratory did not test the swabs from the motorhome air mattress. The lab detected no semen on the swabs from the Harrington Lane mattress but found Todd Dressler's semen on the swabs from E.H.'s face and neck.

PROCEDURE

The State of Washington charged Todd Dressler, in superior court, with three counts of indecent liberties (counts 1, 3, and 4), one count of second degree incest (count 2), one count of third degree rape (count 5), and one count of first degree incest (count 6), all allegedly committed against his step-daughter, E.H., between January 1 and August 17, 2020. The State then dismissed the previously filed district court charges. The State alleged that Dressler sexually abused E.H. during 2020 by groping her while she slept, ejaculating on her face and feet, and on one occasion inserting a finger into her vagina.

The State preemptively moved to exclude evidence under ER 404(b) related to Todd Dressler's alleged violations of the district court's pretrial no-contact order. The prosecution argued that the evidence lacked relevance to the pending felony charges and would result in a collateral mini-trial on an issue unrelated to the case.

Todd Dressler asserted ER 608 in opposing the State's motion in limine. Dressler emphasized the need to introduce E.H.'s fabrications of misconduct against him

7

since his guilt or innocence particularly depended on E.H.'s truthfulness. Dressler did not ask to question E.H. about her purported fabrications but instead to introduce photographs and witnesses that demonstrated he visited Bellingham on the dates E.H. accused him of violating the no-contact order.

The trial court granted the State's motion in limine. The court reasoned that E.H.'s allegations regarding Todd Dressler's violations of the no-contact order would not establish any fact relevant to the charged offenses but would instead be used solely to attack her credibility. The court further reasoned that questioning about any violations of the no-contact order could confuse the jury as to the charges against Dressler.

During trial testimony, E.H. acknowledged that she initially told Detective Jack Fisher that Todd Dressler first touched her inappropriately during the motorhome incident on August 16-17, 2020. She explained she was embarrassed, feared her mother would blame her, and did not want to disclose all the details in front of church members.

Todd Dressler testified to the night of August 16-17, 2020. He averred that he exited the bedroom with semen on his hand intending to clean himself off outside of the motorhome on the grass. He accidentally stumbled on a shoe box, causing the secretion to land on E.H. Under cross-examination, Dressler admitted that he never attempted to clean himself with dirty laundry in the bedroom, with toilet paper in the bathroom, in the bathroom sink, or with paper towels in the kitchen.

8

The jury acquitted Todd Dressler of count four, one of the indecent liberties charges and found him guilty of the remaining counts. The jury entered special verdicts for counts 1, 3 and 5 that they were committed against a household member.

Todd Dressler filed a motion for a new trial. He posited that the trial court erred by excluding evidence impeaching E.H.'s credibility regarding her alleged false reports of Dressler violating the district court no-contact order. Dressler emphasized that no physical evidence or eyewitness confirmed the alleged fact comprising the charges arising before August 16-17, 2020. According to Dressler, E.H.'s credibility was key to the convictions, and the trial court interfered in his ability to impeach E.H. as untruthful. The trial court denied the motion.

The trial court sentenced Todd Dressler to concurrent terms totaling 96 months of incarceration and 24 months of community custody. Nevertheless, the warrant of commitment incorrectly states that the jury convicted Dressler of six offenses, despite his acquittal on one count of indecent liberties.

## LAW AND ANALYSIS

On appeal, Todd Dressler renews his objection to the trial court's refusal to permit him to impeach E.H.'s credibility with her purported false allegations that he violated a no-contact order when he was not present in town. He asserts that the trial court committed constitutional error, when denying him the ability to question E.H. about her

allegations, in addition to evidentiary error.  Dressler also assigns error to the warrant of commitment's listing of six convictions.  Finally, he files a statement of additional grounds (SAG) on his own.

CONSTITUTIONAL ERROR

Todd Dressler contends the trial court infringed on his Sixth Amendment to the United States Constitution and Washington Constitution, article I, section 22 rights to present a defense when the court denied him the opportunity to establish that E.H. falsely accused him of violating a no-contact order.  The State responds that Dressler never argued before the trial court that excluding this evidence violated his constitutional right to present a defense.  We agree with the State and deny review of this asserted constitutional error.

In opposition to the State's motion in limine and during trial, Todd Dressler never expressly argued that excluding the evidence violated his constitutional rights.  On appeal, Dressler asserts that he implicitly raised the constitutional right to present a defense by arguing the excluded evidence was "highly relevant evidence" to his defense. Reply Br. of Appellant at 4.  We disagree.  Relevance serves as a factor in constitutional analysis, but relevance also bears importance in an ER 403 inquiry.  Dressler never asserted any case law under the constitution to support a constitutional contention.

10

An appellate court may decline to consider a claim of error not raised before the

trial court. RAP 2.5(a); *State v. Blake*, 172 Wn. App. 515, 529, 298 P.3d 769 (2012).

The court should ignore this failure of preservation of error, however, when the

assignment of error implicates a manifest constitutional error. RAP 2.5(a)(3). Under

RAP 2.5, a manifest constitutional error consists only of an obvious error that the trial

court would be expected to correct even without an objection. *State v. Hood*, 196 Wn.

App. 127, 135-36, 382 P.3d 710 (2016); *State v. O'Hara*, 167 Wn.2d 91, 99-100, 217

P.3d 756 (2009). Todd Dressler does not assert manifest constitutional error on appeal.

ER 608

We now address the argument Todd Dressler preserved for appeal. Dressler

asserts that the trial court failed to properly assess his request to admit the evidence under

ER 608(b). The rule declares:

> Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's credibility, other than conviction of crime as provided in rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross examination of the witness (1) concerning the witness's character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

Evidence of a witness' character, trait of character, or other wrongs or acts are not

admissible for the purpose of proving action in conformity therewith on a particular

11

occasion except as provided in ER 607, 608, and 609.  ER 404(a)(3).  ER 608 prevents an attack on the credibility of a witness' conduct by presentment of extrinsic evidence. Nevertheless, in the discretion of the court, and if probative of truthfulness or untruthfulness, a party may inquire on cross-examination of the witness concerning her character for truthfulness or untruthfulness.  ER 608(b).  In exercising its discretion, the trial court may consider whether the instance of misconduct is relevant to the witness' veracity on the stand and whether it is germane or relevant to the issues presented at trial. *State v. O'Connor*, 155 Wn.2d 335, 349-50, 119 P.3d 806 (2005).  In *State v. Griswold*, 98 Wn. App. 817, 831, 991 P.2d 657 (2000), this court ruled the trial court did not abuse discretion when preventing cross-examination of the victim because a prior false statement was collateral and not relevant to the guilt issues.

We conclude the trial court did not abuse its discretion when granting the State's motion in limine.  E.H. never claimed with certainty that she saw Todd Dressler during the times he was allegedly in Bellingham.  Kari Deford originated many of the allegations.

## WARRANT OF COMMITMENT

The State concedes that the warrant of commitment inaccurately reads that the jury convicted Todd Dressler on all six counts, when he was found guilty of only five. Remand is the proper remedy for a scrivener's error in the judgment and sentence.  *State*

12

*v. Makekau*, 194 Wn. App. 407, 421, 378 P.3d 577 (2016).  We remand to the superior

court for correction of the error.

STATEMENT OF ADDITIONAL GROUNDS

Todd Dressler presents three additional grounds for relief: (1) the trial court

abused its discretion by preventing him from introducing evidence that he did not violate

a no-contact order or conditions of release; (2) the State committed misconduct during

closing arguments by repeatedly asking the jury, "What would E.H. have to gain from

this accusation?"; and (3) the trial court erred by refusing to allow testimony about an

ongoing physical relationship between E.H. and D.H.  RP at 1537.  Because his appeal

brief addresses the first argument, we do not readdress it.

Todd Dressler objected to the State's closing argument and sought either a mistrial

or a curative instruction.  The trial court granted the latter request and instructed the jury:

> The defendant has no burden of proof showing what an alleged
> victim has to gain by testifying or making allegations against the defendant.

SAG at 8.  Assuming any error, the court mitigated the error.  Dressler establishes no

harmful prejudice by the State's comments.

Todd Dressler claims that E.H. maintained a physical relationship with her

brother, D.H.  He fails to explain the relevance of any evidence, assuming it occurred.

Under ER 401, evidence is relevant only if it has "any tendency to make the existence of

any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Any alleged relationship between E.H. and D.H. bears no relevance to whether Todd Dressler committed indecent liberties, rape, or incest.

CONCLUSIONS

We affirm Todd Dressler's five convictions. We remand to the superior court to correct the warrant of commitment.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, J.

WE CONCUR:

_____
Lawrence-Berrey, C.J.

_____
Murphy, J.