# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 53296-4-II |
| Respondent, | (consolidated with No. 53329-4-II) |
| v. | |
| JOHN MICHAEL SANCHEZ, | UNPUBLISHED OPINION |
| Appellant. | |

GLASGOW, A.C.J.—John Michael Sanchez's ex-girlfriend had a no contact order against him. While the order was in place, he gained entry to her home and attacked her, refusing to leave for several hours. He ultimately pleaded guilty in 2019 to first degree burglary, indecent liberties, witness tampering, felony violation of a no contact order, and cyberstalking, all with domestic violence designations.

Five attorneys represented Sanchez before his plea. Each withdrew due to conflicts that Sanchez created by suing them or because Sanchez threatened them or refused to communicate with them. The trial court ruled that Sanchez both forfeited his right to counsel and waived that right by conduct. Sanchez had limited representation from a sixth attorney when evaluating the plea offer. After the guilty plea was entered, Sanchez sought to withdraw his plea and arrest judgment just before sentencing, but the trial court ultimately denied these motions.

At sentencing, the trial court found that none of the charges were the same criminal conduct and imposed an exceptional sentence under the free crimes provision. The trial court ordered the witness tampering sentence to run consecutive to the other charges.

Sanchez appeals his judgment and sentence. He argues that the trial court lacked jurisdiction and abused its discretion by denying his request for a competency evaluation, denying his postplea motions, and ordering an exceptional sentence. Sanchez seeks resentencing based on the recent reversal of a separate conviction that was included in his offender score. Sanchez also raises other arguments for reversal in a statement of additional grounds for review (SAG).

We affirm Sanchez's convictions but reverse his judgment and sentence and remand for correction of the offender scores and resentencing.

FACTS

In September 2017, Sanchez sent his ex-girlfriend, RN, approximately 300 threatening and harassing text messages even though she had a no contact order against him. Sanchez then gained entry into RN's home by convincing their seven-year-old child to let him in. Sanchez refused to leave the house for the next 19 hours, and he slapped RN and had sexual intercourse with her against her will.

The State initially charged Sanchez with residential burglary, stalking, two counts of violating a no contact order, unlawful imprisonment, and assault in the fourth degree, all with domestic violence designations under cause no. 17-1-01676-34 (the 2017 case).[1] Several months later, while incarcerated awaiting trial, Sanchez made phone calls and sent letters to RN that led to additional witness tampering charges under cause no. 18-1-02130-34 (the 2018 case).

---

[1] The charges were amended eight times over the course of the case, eventually including rape and witness tampering charges in the 2017 case.

A.     Preliminary Proceedings

1.     Sanchez's many attorneys and his efforts to disqualify Judge Lanese and proceed pro se

In the 2017 case, the trial court permitted Sanchez's first attorney to withdraw in October 2017 because Sanchez filed a bar complaint against the entire Thurston County Public Defense office, including attorney one.[2] Attorney two was then appointed to represent Sanchez.

Attorney two moved to withdraw four times over eight months. Sanchez made it clear that his case should be a priority over attorney two's other cases, repeatedly told attorney two that he was fired, threatened to sue him, and demanded attorney two pursue 13 different actions including DNA tests, "a full forensic phone dump," numerous subpoenas, and an interlocutory appeal. Clerk's Papers I (CPI) at 27 (underscore omitted). Sanchez filed a complaint with the superior court attempting to force attorney two to pursue those endeavors, and Sanchez eventually refused to work with attorney two. After several attempts to convince Sanchez to cooperate with his attorney, the trial court permitted attorney two to withdraw in July 2018.

Attorney three was Sanchez's lawyer for less than a week before Sanchez filed a motion to proceed pro se. The trial court conducted a colloquy with Sanchez regarding the procedures and consequences of proceeding pro se. The trial court found the request timely, unequivocal, voluntary, knowing, and intelligent, and let Sanchez proceed pro se with attorney three as standby counsel. Sanchez unsuccessfully sought to have attorney three removed as standby counsel in August 2018 and filed a bar complaint against her.

---

[2] Sanchez's various attorneys' names are immaterial to our analysis.

Sanchez moved to relinquish his pro se status and asked the trial court to assign counsel in August 2018. Judge Christopher Lanese was the assigned judge and he first raised whether he had been disqualified from all of Sanchez's then-existing cases. Sanchez explained that he had filed affidavits disqualifying Judge Lanese in other cases, but not the 2017 case. In response to clarifying questions from the bench, Sanchez stated that he did *not* want Judge Lanese to be disqualified from the 2017 case. Judge Lanese then allowed Sanchez to withdraw his pro se status and ordered that he be assigned counsel from Thurston County Public Defense if he was not able to hire a private attorney within a week.

When Sanchez failed to hire counsel, he was appointed his fourth attorney in the 2017 case in September 2018. Sanchez told attorney four he had a conflict with her office, which she disputed, and he refused to communicate with her. In October 2018, Sanchez moved to remove attorney four, asserting that he had filed a bar complaint and ineffective assistance of counsel claim against her, as well as a civil suit "vs public defense." Suppl. Clerk's Papers I (SCPI) at 494. Attorney four withdrew in October 2018 due to a conflict involving another client. Sanchez then filed a bar complaint against attorney four.

Sanchez's fifth attorney appeared in late October 2018. Sanchez moved to proceed pro se again less than three weeks later in mid-November 2018. At a hearing in mid-December 2018, Judge Lanese denied the motion due to Sanchez's equivocation throughout his case.

The day after the hearing, December 14, 2018, Sanchez filed a motion under the 2018 case—the witness tampering case—stating in its entirety: "I wish to proceed pro-se and file a notice of disqualification on Judge Murphy." Suppl. Clerk's Papers II (SCPII) at 248. The

handwritten motion had Judge Lanese's name crossed out and replaced with Judge Carol Murphy's name.

On December 24, 2018, Sanchez appeared without counsel and informed the trial court that he was no longer on speaking terms with attorney five and had "filed a conflict of interest" against him. Verbatim Report of Proceedings (VRP) (Dec. 24, 2018) at 3. Sanchez also told Judge Lanese that he had filed a notice of disqualification against Judge Lanese, which did not appear in the file when the court searched for it. Sanchez filed a complaint against "[attorney five]/court" two days later, stating that he was "refusing any/all contact with [attorney five] and filing with [the] Bar," and had been denied his right to proceed pro se. SCPI at 457.

On December 27, 2018, Judge Lanese addressed the attempts to disqualify him. He described the handwritten notice of disqualification where Judge Lanese's name was crossed out and Judge Murphy's name was written in, and stated that he had not been disqualified. Sanchez filed a letter in January 2019 claiming that Judge Murphy's name in the December 14, 2018 notice was a "typo." SCPI at 459.

By January 2019, Sanchez had an established track record of refusing to appear in court. He refused to be transported from jail to the courthouse on at least 13 occasions over the course of proceedings. In early January 2019, the trial court swore in a corrections officer to answer questions establishing that Sanchez was choosing not to appear and that nothing physically prevented him from appearing. The trial court then ruled that if Sanchez continued to refuse to appear, he would be deemed to have voluntarily waived his right to be present for pretrial proceedings.

5

Sanchez filed a document titled "Notice of disqualification LANESE" on January 8, 2019, in the 2018 case. SCPII at 249. The next day, the trial court held a hearing where it reiterated that the effective notice of disqualification in the 2018 case was for Judge Murphy, so Judge Lanese was not disqualified. At the same hearing, the State moved to join the 2017 case with the 2018 case. After hearing defense counsel's argument against joinder, the trial court granted the motion, joining the cases under the 2017 cause number.

Also at the same hearing, attorney five refused to voluntarily withdraw despite Sanchez's efforts to disrupt their relationship, which included filing bar complaints and threats of a malpractice suit against attorney five and his law firm. The trial court also declined to remove attorney five from the case. The trial court then denied Sanchez's motion to proceed pro se under both cause numbers on grounds of equivocation and made a separate finding "that Mr. Sanchez is making such requests in an attempt to manipulate and control the court proceedings." VRP (Jan. 9, 2019) at 38. The trial court noted Sanchez's multiple efforts to cause delay "including his refusal to appear in court, his multiple filings directly with the court," and his multiple motions seeking and relinquishing pro se status. *Id.* The trial court found that "considering the totality of the circumstances," Sanchez's underlying motive was to delay proceedings, and this was an independent reason for denying the motion to proceed pro se. *Id.*

Attorney five unsuccessfully sought to withdraw later in January 2019 and again in March 2019, however, based on Sanchez's refusal to meet with him. The trial court denied the motions to withdraw, emphasizing Sanchez's intentional efforts to create conflict.

Shortly before trial was scheduled to begin in April 2019, attorney five discovered that Sanchez had filed a civil malpractice lawsuit against him, prompting attorney five to renew his

6

motion to withdraw. Sanchez also filed a motion demanding attorney five withdraw because of the lawsuit. The trial court recognized the malpractice suit as a ploy to obtain attorney five's withdrawal. The trial judge acknowledged that permitting the withdrawal would force Sanchez to go to trial pro se without standby counsel, which "is what I believe is the appropriate thing given this procedural posture, and it might be what Mr. Sanchez actually wants." VRP (Apr. 5, 2019) at 6.

Sanchez refused to directly answer the trial court's question as to whether he objected to starting trial the following Monday pro se and without standby counsel. Instead, Sanchez said, "I'm objecting to the Court even hearing this. I have issues with you to begin with. There's an interlocutory appeal, so I'll probably just appeal it, and I object to almost anything being done today in front of you." *Id.* at 7-8. He then stated he was "hiring a trial lawyer." *Id.* at 8. The trial court warned Sanchez that it would begin holding him in contempt if he refused to comply with directives or answer its questions. Attorney five then disclosed additional threats of physical and financial harm that Sanchez had made against both attorney five and his investigator.

When the trial court asked Sanchez for his position on attorney five's withdrawal, Sanchez listed his grievances against attorney five, including stating that he had filed a bar complaint and claiming that he had hired a lawyer who was present in the courtroom "to see if we can get a substitution." VRP (Apr. 8, 2019) at 35. The lawyer Sanchez referenced stated that he had not been retained by Sanchez or contacted by Thurston County Public Defense regarding substituting for attorney five. He was attending at Sanchez's request in case he was retained in the future.

The trial court found good cause for attorney five to withdraw. The trial court then found that Sanchez had both waived by conduct and forfeited his right to counsel:

> [T]he case law is clear that a defendant may engage in conduct that is so inconsistent with the right to representation that one's conduct might be said to demonstrate a waiver of the right to be represented by a lawyer. I am making that finding in this case.
>
> I am additionally finding . . . that Mr. Sanchez has been abusive and dilatory towards his assigned counsel such that he has forfeited the right to have a lawyer. Thus, I am making that finding in the alternative.
>
> . . . .
>
> There have been references that Mr. Sanchez has been making efforts to retain an attorney in this matter. He has made those references for many months now, and we are still in the same position. If he had wanted and had been able to actually retain a lawyer, that could have and in my estimation would have occurred by now; it has not. My ruling does not, however, preclude any motions, should he actually successfully retain a lawyer, for him to ask to be represented.
>
> At this point, I am making the finding that he has waived the right to counsel, but any ruling may be revisited upon a change of circumstances, and if those circumstances were to be presented and if I were to engage in an in-depth colloquy with said counsel who would be willing to step in, then I would of course . . . entertain that issue. But at this time the record is replete with the conduct of Mr. Sanchez that is both utterly inconsistent with a desire to not waive counsel, and other than his rogue recitations that he wants to have an attorney, his actions are very inconsistent with that.
>
> I am alternatively finding that his abusive and dilatory conduct with respect to his counsel is such that he has forfeited the right to have counsel by his misconduct.

*Id.* at 41-43. As a result, the trial court did not order Thurston County Public Defense to assign Sanchez another lawyer or standby counsel.

2.      Sanchez's self-representation just before trial

Sanchez then declared, "Based on your own statements about my abusive dilatory inconsistent behavior, I'd like to declare myself 10.77,[3] incompetent to stand trial, and I would

---

[3] RCW 10.77.050 provides, "No incompetent person shall be tried, convicted, or sentenced for the commission of an offense so long as such incapacity continues."

8

like a [psychological] evaluation" and a continuance. *Id.* at 47. The trial court denied the continuance, highlighting that Sanchez had "forfeited or waived any argument about prejudice to proceeding to trial" through his own actions, but noted that it would stretch jury selection over several days to give Sanchez time to prepare in the afternoons. *Id.* at 49.

The prosecutor advised that she had listened to a jail phone call Sanchez made where Sanchez stated, "[H]e might just go a 10.77 just for the f[**]k of it," and, when the other person asked what Sanchez would be going to Western State Hospital for, "Mr. Sanchez replie[d], 'For free phone calls.'" *Id.* at 79. The trial court reserved its ruling on Sanchez's motion until the next morning but stated that "right now I have no reason to doubt the competency of Mr. Sanchez. He may have additional information that he wants to present." *Id.* at 80.

The next day, Sanchez sought to change his plea to not guilty by reason of insanity. Sanchez asserted that he was taking antidiarrheal and antinausea medications, that he had previously been found incompetent in Chelan County, and that his equivocation regarding his previous motions to proceed pro se was due to mental illness. The trial court noted that taking medication did not alone make a defendant incompetent and expressed its intent to move proceedings along. The State pointed out that RCW 10.77.060(1)(a) evaluations are standard practice if there is a hint of a competency issue and that none of Sanchez's five attorneys had raised concerns. The State also pointed out that the Chelan County psychological evaluation "found Mr. Sanchez to be competent." *Id.* at 123.

The trial court denied Sanchez's motion to change his plea due to untimeliness, a lack of observable competency issues, and because it perceived that Sanchez's motive was to further delay proceedings. The trial court stated, "[I]f Mr. Sanchez later obtains information . . . material to these

9

determinations, I will of course revisit that conclusion and will change my decision if appropriate." *Id.* at 135. Sanchez argued that he was being "punished for practicing [his] legal rights by opening civil actions" and sought another continuance, which the trial court denied. *Id.* at 151. The trial court emphasized that Sanchez's choices, including forfeiture of his right to counsel, had resulted in his current situation.

There was then discussion on the record about Sanchez's claim that he was ill. The trial court swore in and questioned a corrections officer who could not corroborate Sanchez's claims of illness. Documents in the record from throughout the proceedings included comments from medical staff asserting that Sanchez was malingering or faking symptoms to gain advantages in his cases.

The next day, Sanchez initially declined to attend court, and when he was made to appear, he refused to change out of his orange jumpsuit, which meant leaving him in shackles as well under jail policy. When trying to determine whether the trial court could have the shackles removed, the court asked Sanchez if he wanted to be in shackles, and Sanchez responded, "I want you to eat s[***] and die." VRP (Apr. 10, 2019) at 206-07. He continued to shout profanities at the trial court until he was removed from the courtroom. On his way down the hallway, he shouted at the jury for a different case.

The trial court reconvened with Sanchez appearing by video from another courtroom. The trial court described the situation as "difficult," but also recognized that Sanchez had intentionally created it "through his own misconduct." *Id.* at 210. The trial court found that Sanchez had waived his presence in the courtroom and would only appear by video unless he agreed "to conduct himself in a way that allows us to actually try this case." *Id.* at 212. The trial court also took testimony

10

from a corrections officer who reported that Sanchez had stated to him that the trial was "supposed to go eight days, but I'm gonna have fun dragging it out for 30 days." *Id.* at 218.

The trial court recognized that Sanchez had specific rights that the court "will do everything in our power to respect" but noted that Sanchez "has wanted to control, delay, and obstruct justice as much as possible. . . . We are going to do what we need to effectively and efficiently resolve this case within the confines of the law." *Id.* at 219. When the trial court asked Sanchez if he understood and wished to come back to the courtroom, Sanchez claimed that he had been sleeping. The trial court stated that it had observed Sanchez looking at papers and making a rude gesture while pretending to sleep and found that Sanchez's representations about his physical well-being were not credible.

B.      Guilty Plea

An attorney from Thurston County Public Defense agreed to speak with Sanchez during a recess. After that meeting, Sanchez expressed willingness to consider a plea offer. The trial court appointed a conflict attorney, attorney six, as standby counsel in a limited capacity to review the plea offer with Sanchez. The trial court gave Sanchez 45 minutes to review the plea before it intended to proceed with 20 minutes of the State's portion of voir dire before the end of the day. Judge Lanese emphasized, "I have been and will be patient," and that he was balancing the need to move things along with Sanchez's need for advisement on his plea, noting that after a short voir dire, the trial court would recess for the day, giving Sanchez more time in the afternoon and evening. *Id.* at 261. Shortly before 45 minutes elapsed, attorney six returned to state that Sanchez had no competency issues and to ask for 10 additional minutes, which the trial court granted.

When the time expired, attorney six did not ask for additional time. The trial court conducted a colloquy with Sanchez to establish that the plea was knowing, intelligent, and voluntary. When asked whether attorney six satisfactorily answered any questions, Sanchez said, "[W]e were really rushed," and Judge Lanese reminded him that "hedging is going to result in me not accepting this plea." *Id.* at 269. The trial court then restated the question:

> THE COURT: I understand you're being honest, and I'm not saying that you are doing anything improper. I'm just letting you know that I have to have a hundred percent confidence that you know and are voluntarily doing what you're doing. So again, I'm not saying that you're messing around at all, but the statements that you're making are such that I wouldn't accept the plea. I need to have unequivocal statements that you do understand and that you got whatever assistance you needed. So I will just -- and I'm not saying that there is anything wrong. I'm going to try it again.
> Do you understand this document?
>
> THE DEFENDANT: Yes, I do.
>
> THE COURT: And if you had any questions, did your lawyer answer them to your satisfaction?
>
> THE DEFENDANT: Yes, he did.

*Id.* at 269-70. Sanchez pleaded guilty to first degree burglary, indecent liberties, witness tampering, felony violation of a no contact order, and cyberstalking, all with domestic violence designations. The trial court found the plea knowing, intelligent, and voluntary and accepted the plea. Attorney six agreed to prepare a mitigation package and appear at sentencing.

C.      Sentencing

Sanchez drafted a pro se motion to withdraw his plea and arrest judgment, but the trial court had not received the motion at the time of sentencing, so attorney six asked the court to acknowledge the motion had been made and preserve the issue, which the court granted.

With regard to sentencing, the State argued that none of the charges were the same criminal conduct, arguing in part that Sanchez only developed the intent to sexually assault RN after observing an item that appeared to belong to another man in her bedroom, well after he violated the no contact order. Sanchez also told the presentence investigator that he had only gone to RN's house to visit their child.

The trial court concluded that none of the charges constituted the same criminal conduct and that the RCW 9.94A.535(2)(c) free crime basis for an exceptional sentence applied due to Sanchez's high offender scores, as well as the temporal and geographic distance between the witness tampering offense and the other charges. Sanchez's offender scores for his felonies were 10 for the first degree burglary, 13 for the indecent liberties, 11 for the witness tampering, and 10 for the violation of the no contact order. The cyberstalking was a misdemeanor. The trial court noted that the offender score for the indecent liberties charge "was already maxed out," so the witness tampering charge did not increase the standard sentencing range, meaning that the witness tampering would go unpunished unless it was run consecutively. VRP (May 2, 2019) at 79.

The trial court imposed an exceptional upward sentence, running the witness tampering sentence consecutive to the sentences for the other crimes. The trial court sentenced Sanchez to 116 months concurrently for both the burglary and indecent liberties, 60 months concurrently for the violation of the no contact order, 364 days concurrently for the cyberstalking, and 60 months consecutively for the witness tampering. Sanchez received a total sentence of 176 months of confinement. The trial court made oral and written findings supporting the sentence: "pursuant to RCW 9.94A.535(2)(c), the defendant has a high offender score that accounts for some crimes being unpunished," and "[b]ased on the separation of time and proximity for the acts that occurred

in count 3 [the witness tampering] and the defendant[']s high offender score, this crime would go unpunished without the imposition of an exceptional sentence." CPI at 400.

D.        Motions to Arrest Judgment and Withdraw Plea

The day after his sentencing, Sanchez's motion to withdraw his guilty plea and arrest judgment under CrR 4.2 and 7.4 was properly filed. Sanchez's motion does not mention CrR 7.8. Sanchez appeared pro se at a separate hearing to argue that the plea was the result of a manifest injustice. Sanchez said at the hearing that he had also submitted a proposed "7.8, modified judgment" removing his exceptional sentence, but no written CrR 7.8 motion appears in our record. VRP (July 2, 2019) at 22.

The trial court denied Sanchez's motions. The trial court denied the motion for arrest of judgment because CrR 7.4 does not apply to plea deals. In the alternative, the trial court reiterated that there was a sufficient factual basis for Sanchez's guilty plea. The trial court found that Sanchez had not carried his burden of showing manifest injustice to withdraw his plea, because the motion misrepresented the facts, and even if it did not, the facts as described did not constitute a manifest injustice warranting withdrawal. And the trial court found that Sanchez had not met his burden for his "various other requests and arguments," stating that it was "not modifying the judgment and sentence in this case." *Id.* at 77. Although the order listed CrR 7.8 as a basis for Sanchez's motion in its order denying withdrawal of the plea and arrest of judgment, Sanchez's motion and the trial court's oral ruling were not based on CrR 7.8.

In 2020, this court reversed a witness tampering charge against Sanchez from a different case and remanded for a new trial. *State v. Sanchez*, 14 Wn. App. 2d 261, 263, 471 P.3d 910 (2020). That conviction was included in Sanchez's offender scores at sentencing in this case.

14

Sanchez filed two appeals in this case. The first appeal challenged his exceptional sentence and the refusal to order a competency evaluation. The second appeal disputed the trial court's jurisdiction, the refusal to let Sanchez withdraw his guilty plea, and the refusal to revisit his judgment and sentence. We consolidated the appeals. Sanchez's SAG restates several of the above issues and raises additional arguments.

ANALYSIS

I. TRIAL COURT JURISDICTION

Sanchez's December 14, 2018, notice sought to "file a notice of disqualification on Judge Murphy" in the 2018 case. SCPII at 248. On December 20, 2018, Judge Lanese ordered the consolidation of the 2018 case with the 2017 case containing the charges from the home invasion. Sanchez then filed another notice in January 2019 under the 2018 case seeking to disqualify Judge Lanese.

Sanchez claims that he disqualified Judge Lanese in January 2019 from the 2018 case, voiding the trial court's jurisdiction and that this disqualification extended to the 2017 case. The State argues that Judge Murphy was disqualified from the 2018 case and that Sanchez was entitled to only one such disqualification under that cause number. We agree with the State.

RCW 4.12.050(1) provides for disqualification of judges:

Any party to or any attorney appearing in any action or proceeding in a superior court may disqualify a judge from hearing the matter, subject to these limitations:
(a) Notice of disqualification must be filed and called to the attention of the judge before the judge has made any discretionary ruling in the case.
. . . .
(d) No party or attorney is permitted to disqualify more than one judge in any matter under this section and RCW 4.12.040.

15

"A party is entitled to only one change of judge as a matter of right." *State v. Detrick*, 90 Wn. App. 939, 942, 954 P.2d 949 (1998). There is no question of fact or discretion upon disqualification, and prejudice "is deemed to be established by the affidavit." *State v. Dixon*, 74 Wn.2d 700, 702, 446 P.2d 329 (1968). However, a party may not "thereafter file successive affidavits and obtain any additional change of judges." *Id*.

Sanchez argues that Judge Murphy's name in the December document was a "'typo.'" Br. of Appellant (Mar. 27, 2020) at 7. In the December notice, the word "Lanese" was crossed out by hand and replaced with "Murphy." SCPII at 248. This does not support Sanchez's assertion that Judge Murphy's name was a "typo," but rather indicates that Sanchez filed a notice of disqualification against Judge Murphy on December 14, 2018 followed by a successive notice of disqualification against Judge Lanese in January 2019. *See Dixon*, 74 Wn.2d at 702. Moreover, to the extent Sanchez filed notices of disqualification expressly trying to disqualify Judge Lanese, he did so after Judge Lanese granted the motion to withdraw Sanchez's pro se status and denied his renewed request to proceed pro se in the 2017 case, which is the cause number the cases were joined under. Neither Sanchez nor his counsel objected to Judge Lanese hearing the motion to join the two cases. *See* RCW 4.12.050(1)(a); *State v. Smith*, 13 Wn. App. 859, 860-61, 539 P.2d 101 (1975) (holding that failure to bring the notice to the judge's attention constitutes waiver of the disqualification). Judge Lanese could not be disqualified under the statute after entering these orders. RCW 4.12.050(1)(a). We hold that the trial court did not lack jurisdiction.

II. COMPETENCY EVALUATION

Sanchez argues that he was incompetent to enter a guilty plea and that the trial court abused its discretion by failing to order a competency evaluation, regardless of the lack of such motion from defense counsel. We disagree.

RCW 10.77.050 provides, "No incompetent person shall be tried, convicted, or sentenced for the commission of an offense so long as such incapacity continues." A defendant is competent if they understand the nature of the charges and are capable of assisting in their defense. *In re Pers. Restraint of Fleming*, 142 Wn.2d 853, 862, 16 P.3d 610 (2001). The competency standard for pleading guilty or waiving the right to counsel is the same as the standard for competence to stand trial. *Id.*

RCW 10.77.060(1)(a) provides that when "there is reason to doubt [a defendant's] competency, the court on its own motion or on the motion of any party shall" appoint "a qualified expert . . . to evaluate and report upon the mental condition of the defendant." Whether to order a competency examination is within the discretion of the trial court. *State v. Heddrick*, 166 Wn.2d 898, 903, 215 P.3d 201 (2009). A reviewing court will find an abuse of discretion only when the trial court's decision is manifestly unreasonable or is based on untenable grounds. *State v. Sisouvanh*, 175 Wn.2d 607, 623, 290 P.3d 942 (2012).

"[T]he ultimate question for the trial court is whether there is a factual basis to doubt the defendant's competence." *State v. Woods*, 143 Wn.2d 561, 605, 23 P.3d 1046 (2001) (internal quotation marks omitted). When determining whether a competency hearing is necessary, "the factors the trial court considers include the defendant's behavior, demeanor, appearance, personal and family history, and psychiatric reports." *State v. McCarthy*, 193 Wn.2d 792, 801, 446 P.3d

17

167 (2019). Trial courts afford considerable weight to defense attorney opinions regarding their clients' competency. *Id*. If competency is "'fairly debatable,'" the trial court's failure to order an evaluation will not violate RCW 10.77.060 and does not constitute an abuse of discretion. *Id*. at 803 (quoting *Sisouvanh*, 175 Wn.2d at 623).

After Sanchez asked for an evaluation, the trial court repeatedly assessed and discussed on the record Sanchez's competency, regularly noting that the court was open to new information. Five attorneys—two of whom represented Sanchez for over four months each—never raised competency concerns. Attorney six, who helped Sanchez evaluate the plea deal, also expressly informed the trial court that he had no concerns about competency minutes before Sanchez signed the plea.

The trial judge was in a better position than this court to assess Sanchez's demeanor and credibility, and the trial court repeatedly found that Sanchez was making calculated efforts to delay and control proceedings, including by leveraging his allegations of incompetency. The record contains statements from jail medical staff indicating that Sanchez was malingering or faking symptoms to draw out the trial and seek other advantages. The only person to question Sanchez's competency was Sanchez himself, who the trial court repeatedly found not credible. The trial court did not abuse its direction by refusing to order a competency evaluation.

III. MOTION TO WITHDRAW PLEA AND VACATE JUDGMENT AND SENTENCE

A.    Motion to Withdraw Plea

Sanchez argues that the trial court abused its discretion by denying his motion to withdraw his guilty plea because the plea was entered in violation of his right to counsel, constituting a manifest injustice. Sanchez contends that he was forced to plead because he could not realistically

18

proceed to trial pro se, and the trial court had wrongly concluded he was no longer entitled to counsel. Sanchez argues that he was not warned that his behavior would be considered a waiver of the right to counsel and that his conduct was not sufficiently dilatory to result in forfeiture of the right. We hold that Sanchez forfeited his right to counsel and that attorney six's limited representation at the plea stage was sufficient.

We review a denial of a motion to withdraw a guilty plea for abuse of discretion. *State v. Robinson*, 172 Wn.2d 783, 791, 263 P.3d 1233 (2011). A trial court abuses its discretion when the trial court's decision is manifestly unreasonable or is based on untenable grounds. *Sisouvanh*, 175 Wn.2d at 623.

When Sanchez entered his guilty plea, the trial court verified Sanchez understood the plea, that he was forfeiting several rights, that the plea was to a strike offense, the standard sentencing ranges for each count, the State's sentencing recommendation, and that the trial court did not need to follow the State's recommendation. The trial court asked Sanchez for his plea on each count and whether anyone had made threats or promises to convince him to plead guilty. The trial court found the plea was knowing, intelligent, and voluntary. There was not an agreed sentencing recommendation.

CrR 4.2(f) governs prejudgment motions to withdraw guilty pleas: "The court shall allow a defendant to withdraw the defendant's plea of guilty whenever it appears that the withdrawal is necessary to correct a manifest injustice." A manifest injustice "'is obvious, directly observable, overt, [or] not obscure.'" *Robinson*, 172 Wn.2d at 796 (quoting *State v. Taylor*, 83 Wn.2d 594, 596, 521 P.2d 699 (1974)). The denial of effective assistance of counsel is a manifest injustice. *Id*.

19

Here, the trial court expressly told Sanchez that the court would consider the arguments he made in the motion he filed prior to entry of the judgment and sentence.

A defendant is denied assistance of counsel "when counsel was either totally absent, or prevented from assisting the accused." *United States v. Cronic*, 466 U.S. 648, 659 n.25, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984). A defendant can lose the right to counsel through voluntary waiver, waiver by conduct, or forfeiture. *State v. Stutzke*, 2 Wn. App. 2d 927, 937, 413 P.3d 1037 (2018). The trial court found that Sanchez both forfeited his right to counsel and waived the right by conduct. We agree that Sanchez forfeited his right to counsel, so we need not reach the issue of whether he waived the right by conduct.

A defendant may not manipulate their right to counsel to delay or disrupt trial. *State v. Johnson*, 33 Wn. App. 15, 22, 651 P.2d 247 (1982). Forfeiture of the right to counsel "can result even though the defendant was not warned about the consequences of [their] actions or the risks of self-representation, and because of its harsh results requires extremely dilatory conduct." *City of Tacoma v. Bishop*, 82 Wn. App. 850, 859, 920 P.2d 214 (1996).

Conduct that prevents an attorney from preparing a defense may be extremely dilatory, resulting in forfeiture of the right. *In re Dependency of E.P.*, 136 Wn. App. 401, 405-06, 149 P.3d 440 (2006). Repeated failure to communicate with attorneys or appear in court can result in forfeiture. *See, e.g., id.* at 406 (holding mother forfeited right to counsel at dependency hearing when two different attorneys withdrew due to her lack of communication and she failed to attend the hearing); *In re Dependency of A.G.*, 93 Wn. App. 268, 278, 968 P.2d 424 (1998) (holding trial court did not violate right to counsel by allowing lawyer to withdraw at beginning of termination hearing for mother who failed to communicate with lawyer for months and repeatedly failed to

appear in court). Threatening or abusive conduct toward an attorney may also be extremely dilatory. *State v. Palmer*, 18 Wn. App. 2d 825, 835, 493 P.3d 158 (2021) (citing *United States v. Thomas*, 357 F.3d 357, 362-63 (3d Cir. 2004) (holding defendant forfeited right to counsel by threatening harm to attorney, tearing up correspondence, refusing to identify potential witnesses, and demanding attorney file frivolous claims)).

Sanchez's tactics were so dilatory that two and a half years elapsed between his arrest and guilty plea. *Compare* CPI at 1 (information filed Sept. 19, 2017), *and* CPI at 270 (guilty plea filed Apr. 10, 2019). The trial court repeatedly found that Sanchez was actively delaying proceedings. Sanchez refused to appear for at least 13 hearings, even after the trial court ordered that future refusals would constitute voluntary waiver of his right to attend pretrial proceedings. He filed bar complaints against at least three attorneys and sought court orders to force his lawyers to pursue frivolous actions. He threatened lawsuits against at least two attorneys and did file a malpractice lawsuit on the eve of trial to force attorney five's withdrawal. He also made threats of physical and financial harm against attorney five and an investigator. His behavior extended beyond the dilatory conduct that merited forfeiture of the right to counsel in *E.P.* and *A.G.*, and bears notable similarity to the defendant in *Thomas*.

We hold that Sanchez's conduct was extremely dilatory. We hold that Sanchez forfeited his right to counsel, therefore the trial court did not abuse its discretion in refusing to let Sanchez withdraw his guilty plea because the forfeiture supported the trial court's decision to have Sanchez proceed pro se. The limited representation Sanchez enjoyed for the plea proceedings was not a manifest injustice. Sanchez's forfeiture of his right to counsel extended to sentencing as well, so

the limited representation Sanchez had there was also not a manifest injustice. We decline to reach whether Sanchez also waived his right to counsel by his conduct.

B.      CrR 7.4 Motion to Arrest Judgment

Sanchez moved for the trial court to arrest judgment under CrR 7.4. His written motion did not mention CrR 7.8. The trial court denied Sanchez's motion to arrest judgment under CrR 7.4 because that rule does not apply in the plea context absent a trial and a verdict. The trial court also rejected Sanchez's postplea arguments made verbally at the hearing.

On appeal Sanchez relies on an argument that his judgment and sentence was void under CrR 7.8(b)(4) because the judge was partial, violating the appearance of fairness doctrine. Sanchez argues that Judge Lanese's refusal to recuse himself contributed to the violation of the appearance of fairness.

But Sanchez's written motion below was a CrR 7.4 motion, not a CrR 7.8 motion. To the extent the trial court listed CrR 7.8 as a basis for Sanchez's postplea motion, that was a scrivener's error, possibly because the State mistook the motion to withdraw Sanchez's plea as being raised after the judgment and sentence and not before. But the trial court had allowed Sanchez to preserve his motion as a prejudgment motion, making CrR 7.8 inapplicable.

Procedurally, the trial court could not validly outright deny a motion under CrR 7.8. Under CrR 7.8(c)(2) a trial court must transfer a CrR 7.8 motion to this court as a personal restraint petition *unless* the motion is timely under RCW 10.73.090, *and* either a fact finding hearing is required or the movant has made a substantial showing of entitlement to relief. Here, the trial court said that it was rejecting all of Sanchez's arguments. This indicates that the trial court did not

22

intend to treat Sanchez's motion as one based on CrR 7.8. Sanchez does not contest the trial court's denial of the motion under CrR 7.4.

Because neither Sanchez's motion nor the trial court's substantive decision was based on CrR 7.8, Sanchez cannot now make a CrR 7.8 argument on appeal. We therefore decline to address Sanchez's arguments based on CrR 7.8.

## IV. EXCEPTIONAL SENTENCE

Sanchez argues that the trial court abused its discretion when it refused to find the burglary, indecent liberties, and violation of a no contact order were the same criminal conduct. This, in turn, affected the trial court's reliance on the free crimes provision as the basis for an exceptional sentence. The State highlights that the burglary antimerger statute supplemented the trial court's discretion. The State also argues that Sanchez formed separate criminal intents for each crime, making them separate criminal conduct. We agree with the State.

A.      Burglary Antimerger Statute

RCW 9A.52.050 states, "Every person who, in the commission of a burglary shall commit any other crime, may be punished therefor as well as for the burglary, and may be prosecuted for each crime separately." A trial court has "discretion to punish for burglary, even where the burglary and an additional crime encompass the same criminal conduct." *State v. Bradford*, 95 Wn. App. 935, 950, 978 P.2d 534 (1999). This statute gave the trial court discretion to consider the burglary separate conduct from all the other charges. It was not an abuse of discretion for the trial court to apply the antimerger statute and punish the burglary separately.

B.      Same Criminal Conduct Analysis for No Contact Violation and Indecent Liberties Charges

RCW 9.94A.589(1)(a) provides that "if the court enters a finding that some or all of the current offenses encompass the same criminal conduct then those current offenses shall be counted as one crime" for purposes of the offender score. "'Same criminal conduct,' . . . means two or more crimes that require the same criminal intent, are committed at the same time and place, and involve the same victim." RCW 9.94A.589(1)(a). We construe the definition of "same criminal conduct" "'narrowly to disallow most claims that multiple offenses constitute the same criminal act.'" *State v. Graciano*, 176 Wn.2d 531, 540, 295 P.3d 219 (2013) (quoting *State v. Porter*, 133 Wn.2d 177, 181, 942 P.2d 974 (1997)).

This court reviews a trial court's determination of same criminal conduct for abuse of discretion. *State v. Chenoweth*, 185 Wn.2d 218, 220-21, 370 P.3d 6 (2016). The burden is on the defendant to show that multiple crimes constituted the same criminal conduct. *Graciano*, 176 Wn.2d at 540. We may look to the underlying statutes to determine whether the intents of each are the same. *Chenoweth*, 185 Wn.2d at 223. And if the defendant's criminal intent, objectively viewed, changed from one crime to the next, then the charges are not the same criminal conduct. *State v. Dunaway*, 109 Wn.2d 207, 216, 743 P.2d 1237, 749 P.2d 160 (1987). "[T]his analysis will often include the related issues of whether one crime furthered the other and if the time and place of the two crimes remained the same." *Id*. at 215. In *State v. Hood*, Division One held that the trial court was within its discretion to find the defendant's convictions for burglary and violation of a no contact order did not constitute the same criminal conduct. 196 Wn. App. 127, 137, 382 P.3d 710 (2016). Based on testimony at trial, Division One held that the trial court could reasonably have found that the defendant did not develop the intent to assault the victim—a basis for the

24

burglary charge—until after he was inside her dwelling in violation of the no contact order. *Id. See* RCW 9A.52.020(1).

Sanchez argues that his criminal intent to have intercourse with RN remained constant throughout the course of his crimes. To support this argument, Sanchez cites *State v. Haddock*, 141 Wn.2d 103, 3 P.3d 733 (2000) (holding theft of six firearms and computer from single location constituted same criminal conduct), *Porter* (holding sales of two different controlled substances in single transaction were same criminal conduct), and *Dunaway* (holding kidnapping furthered robbery when defendant took money from abductees, then made them drive to bank to withdraw more). Those cases are distinguishable.

To violate a no contact order, the defendant must know of the protection order and violate the order. RCW 26.50.110(1)(a). A defendant is guilty of indecent liberties when they "knowingly cause[] another person to have sexual contact with [the defendant] or another." RCW 9A.44.100(1). Knowingly violating a no contact order is different from knowingly causing another person to have sexual contact. Sanchez violated the no contact order as soon as he was within 500 feet of RN's house. He did not commit the indecent liberties offense until sometime later.

Additionally, the State argued that Sanchez developed intent to commit indecent liberties after seeing an item in RN's bedroom that appeared to belong to another man. Similarly, Sanchez made statements to the presentence investigator that he was only at RN's house to visit his son. It was not untenable for the trial court to decide that Sanchez developed the intent for the indecent liberties well after violating the no contact order.

In sum, we hold that the trial court acted within the bounds of its discretion when it applied the burglary antimerger statute. And we hold that the burglary, indecent liberties, and violation of

25

a no contact order each required a distinct statutory intent that developed at different times and did not constitute the same criminal conduct. Thus, we hold the trial court did not abuse its discretion when it declined to find any of the charges constituted the same criminal conduct. This holding does not affect Sanchez's offender scores.

C.     Offender Score

Sanchez argues that, in light of the reversed conviction in his other witness tampering case, we should remand for correction of this judgment and sentence and resentencing with a reduced offender score for each charge. *See Sanchez*, 14 Wn. App. 2d at 263. We agree that the reversed conviction requires resentencing.

A vacated conviction cannot be included in an offender score. *State v. Haggard*, 195 Wn.2d 544, 560, 461 P.3d 1159 (2020). Court of Appeals cases have been inconsistent in determining whether a reduced offender score warrants resentencing. In *State v. Argo*, 81 Wn. App. 552, 569, 915 P.2d 1103 (1996), Division One held that an erroneous offender score that does not affect the standard range is harmless. And this court has previously explained that "a reduced standard range, not a reduced offender score, requires resentencing on remand." *State v. Kilgore*, 141 Wn. App. 817, 824, 172 P.3d 373 (2007) (emphasis omitted) (footnote omitted). But in *State v. McCorkle*, the State failed to prove comparable foreign convictions, resulting in a miscalculation of the offender score that did not affect the standard sentence range. 88 Wn. App. 485, 499, 945 P.2d 736 (1997), *aff'd*, 137 Wn.2d 490 (1999). We held the error was not harmless because "the record does not clearly indicate that the sentencing court would have imposed the same sentence without the [unproved convictions] and the resultant change in offender score." *Id*. at 499-500.

Sanchez's offender score will still be 9 or greater on each current conviction. However, we also consider whether the defendant was sentenced at the bottom of the standard range. If the trial court imposed a low-end sentence and a reduction of the offender score could not result in a lower sentence within the standard range, then resentencing is not necessary. *E.g.*, *State v. Johnson*, 61 Wn. App. 539, 552, 811 P.2d 687 (1991). Here, the trial court did not impose the minimum sentence for Sanchez's convictions, so we recognize the trial court has discretion to impose a different sentence within the standard range. And although the trial court was clear about its reasoning for imposing the current witness tampering sentence consecutive to the other sentences, the record does not clearly indicate that the court would have imposed the same sentences for each conviction should the offender score have been different.

As discussed above, we affirm the trial court's decision not to consider any of Sanchez's charges to be the same criminal conduct. But we remand for the trial court to correct Sanchez's judgment and sentence and resentence him in light of the reversed conviction.

D.     Exceptional Consecutive Sentence

Because the trial court may impose an exceptional consecutive sentence again on remand, we address this issue. Sanchez argues his exceptional sentence was not warranted under the free crimes provision of RCW 9.94A.535(2)(c) because a standard range sentence would not have left any current crime unpunished. We disagree.

Sanchez argues that the reasons provided do not justify an exceptional sentence and that the sentence imposed was clearly excessive. Because we are remanding for resentencing, we will address only Sanchez's first argument.

RCW 9.94A.535(2)(c) provides that a "trial court may impose an aggravated exceptional sentence without a finding of fact by a jury" in cases where a "defendant has committed multiple current offenses and the defendant's high offender score results in some of the current offenses going unpunished." "A defendant whose offender score is at or above 9 will have the same standard range sentence regardless of the number of current or prior offenses." *State v. Smith*, 7 Wn. App. 2d 304, 308, 433 P.3d 821 (2019).

The witness tampering charge increased Sanchez's offender score on the indecent liberties charge—the charge with the highest standard range—from 12 to 13. Because his offender score already exceeded 9, the witness tampering charge did not increase the standard range. Thus, a concurrent standard range sentence would have left the witness tampering unpunished. The trial court issued oral and written findings explaining that Sanchez's offender score of 13 for the indecent liberties justified the consecutive sentence for witness tampering. Sanchez's argument fails.

We hold that Sanchez's high offender score and otherwise unpunished crime justify the trial court's imposition of an exceptional sentence under RCW 9.94A.535(2)(c). Sanchez also argues that the exceptional sentence was an abuse of discretion, but because we are remanding for resentencing, we need not address that argument.

## V. SAG ARGUMENTS

A.      Matters Without Merit or Already Raised by Counsel

Sanchez argues the trial court misinterpreted the law on judicial disqualification and that numerous allegedly prejudicial rulings against Sanchez warranted  recusal. Sanchez asserts that the trial court erred by denying him a continuance after it ruled that he had forfeited the right to

counsel. Sanchez argues he was improperly denied counsel at sentencing and his postsentence motion hearings. He further contests the imposition of an exceptional sentence under RCW 9.94A.535(2)(c). These assertions replicate arguments made by his appellate counsel. Because we reject those arguments above, these claims also fail.

Sanchez argues that the trial court violated mandatory joinder rules when it let him plead guilty to a violation of a pretrial no contact order that was later rescinded because he was acquitted in the underlying case. He argues that the same no contact order was improperly used as an element of his burglary and indecent liberties charges. RCW 26.50.110(1)(a) provides for penalties for the violation of temporary protection orders and merely requires that the "person to be restrained knows of the order" at the time of violation. The record establishes that Sanchez was aware that a no contact order barred him from coming within 500 feet of RN on the day that he entered her home. And a violation of a no contact order is not an element of burglary or indecent liberties. *See* RCW 9A.52.020, .44.100. Thus, these arguments also fail.

B.    Ineffective Assistance of Counsel

Sanchez argues that attorney five provided ineffective assistance of counsel because he did not oppose the State's motion for joinder, did not join Sanchez's motion for new counsel after notice of the civil lawsuit Sanchez filed against him, failed to interview witnesses, failed to seek a competency evaluation, and was not prepared for trial. Sanchez also argues that the trial court abused its discretion and denied him effective assistance of counsel by moving forward with trial with the knowledge that defense counsel was not prepared. Sanchez further argues that the trial court untimely accepted attorney five's withdrawal on the first day of trial. Finally, Sanchez argues that attorney six was unprepared to review his plea as standby counsel.

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 685-86, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. Grier*, 171 Wn.2d 17, 32, 246 P.3d 1260 (2011). Sanchez must show that his counsel's performance was deficient and that counsel's deficient performance prejudiced him. *Grier*, 171 Wn.2d at 32-33. A failure to prove either prong ends our inquiry. *State v. Hendrickson*, 129 Wn.2d 61, 78, 917 P.2d 563 (1996).

Attorney five represented Sanchez for five months, despite Sanchez becoming obstructive and refusing to communicate two months into the representation. Attorney five persisted through threats of physical and financial harm until Sanchez filed a lawsuit against him that made representation impossible. Sanchez does not demonstrate that attorney five's performance fell below an objective standard of reasonableness, considering all the circumstances. *Grier*, 171 Wn.2d at 32. And he has not identified any specific deficiency in his sixth attorney's performance as standby counsel in explaining to Sanchez the plea and its consequences. Sanchez has not established any grounds for reversal in his SAG arguments.

## CONCLUSION

We affirm Sanchez's conviction, but reverse the sentence and remand for correction of the offender score and resentencing consistent with this opinion.

30

Nos. 53296-4-II and 53329-4-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Glasgow, A.C.J.

We concur:

Worswick, J.

Cruser, J.